---

## Case No. 9,187.

### The MARY.

[1 Paine, 671.] [1]

Circuit Court, D. Connecticut. April Term, 1824.

BOTTOMRY — ESSENTIALS — NECESSITY OF LOAN—WHO MAY PLEDGE—OWNER—MONEY TO BUY CARGO—MORTGAGE.

1. The risk of the lender and his right to repayment only on the safe arrival of the vessel, constitute the essential difference between a bottomry and simple loan.

[Cited in The William & Emmeline, Case No. 17,687; Leland v. The Medora, Id. 8,237; Greely v. Smith, Id. 5,750; The Rapid Transit, 11 Fed. 325.]

2. Marine interest is also requisite to a bottomry loan, but if not expressed in the bond, it will be presumed to have been included with the principal.

[Cited in Greely v. Smith, Case No. 5,750.]

---

[1] [Reported by Elijah Paine, Jr., Esq.]

3. The jurisdiction of courts of admiralty over contracts depends principally upon their subject matter; and in cases of bottomry, it is not the absolute necessity of the loan that gives the jurisdiction.

[Cited in Waterbury v. Myrick, Case No. 17,-253; The William & Emmeline, Id. 17,687; The Perseverance, Id. 11,017. Approved in The Draco, Id. 4,057. Cited in Furniss v. The Magoun, Id. 5,163; Leland v. The Medora, Id. 8,237; Waring v. Clarke, 5 How. (46 U. S.) 486; New Jersey Steam Nav. Co. v. Merchants' Bank, 6 How. (47 U. S.) 421; Haller v. Fox, 51 Fed. 299.]

4. And the owner as well as the master of a vessel may pledge her by bottomry in a foreign port.

[Approved in The Draco, Case No. 4,057.]

5. The master of a vessel in a foreign port, acting in the character of agent, is limited in his power, and can only pledge the vessel in case of necessity; but the owner, having an absolute control over his property, may pledge her for money to purchase a cargo, and thereby create an admiralty lien.

[Cited in The Hilarity, Case No. 6,480; ·The Panama, Id. 10,703; Greely v. Smith, Id. 5,750; The Ole Oleson. 20 Fed. 387; Freights of the Kate, 63 Fed. 713, 720.]

6. In November, 1822. the owner of a vessel in Connecticut, gave a bill of sale of her in the nature of a mortgage, but was suffered to remain in possession and act as absolute owner, and her register and all her papers remained unaltered. In July following, he gave a bottomry bond for money advanced to purchase a cargo for the vessel in the West Indies, without notice to the lender of the mortgage: _Held_, that upon common law principles, the claim of the lender was to be preferred to that of the mortgagee.

[Applied in The Romp, Case No. 12,030. Cited in Leland v. The Medora, Id. 8,237; The Hendrik Hudson, Id. 6,358; Greely v. Smith, Id. 5,750.]

[Appeal from the district court of the United States for the district of Connecticut.]

In admiralty.

S. P. Staples and I. J. Hitchcock, for libellants.

N. Smith and J. Backus, for claimants.

THOMPSON, Circuit Justice. This case comes up on appeal from the decree of the district court, dismissing the libel which had been filed in that court against the sloop Mary, upon a bottomry bond given by William H. Young, captain and sole owner of the sloop, which is described as of Fairfield in the state of Connecticut. The bond bears date on the 1st day of July, in the year 1823, and purports to have been executed at the port of Nassau, in the island of New Providence, to Robert Wear Elliot of that place, pledging the said sloop, her tackle, apparel, and furniture, together with her freight and earnings, for the payment of one thousand one hundred dollars, alleged in the bond to have been advanced for the repairs, outfits, and other disbursements, for the use of the said vessel, and for enabling her to perform her voyage, to be paid within sixty days next after the arrival of the vessel in the port of New-York. A claim was interposed by Daniel Young, under a bill of sale in the nature of a mortgage,

executed by William H. Young, bearing date the 16th of November, in the year 1822, as collateral security and indemnity to the said Daniel Young, for one thousand two hundred dollars, for which he was bound for William H. Young to Walter Thorp, being the consideration for the purchase of the sloop. The sloop arrived safe in the port of New-York, and was shortly after removed to Bridgeport in Connecticut, and was there, after the expiration of the sixty days from her arrival in New-York, seized and libelled, possession having been taken by Daniel Young, under his bill of sale. It appears by the proofs, and was admitted by the libellant's counsel, that the principal part of the money advanced by Elliot was for the purchase of a cargo, and not for necessaries for the vessel.

Under these circumstances, the questions presented for consideration, are (1) whether the case falls within the admiralty jurisdiction of the district court; and (2) whether the bottomry bond has priority over the claim under the bill of sale, which is of an antecedent date.

It has not been denied, and I presume cannot be, but that the remedy upon a bottomry bond given by the master abroad, falls properly within the admiralty jurisdiction of the district court. But it is said, when the bond is given by the owner, recourse must be had to the courts of common law. No adjudged case either in this country or elsewhere has been referred to, or has fallen under my observation, to justify such a distinction; and I do not perceive any well founded principle growing out of the nature of the contract to warrant such a distinction.

I deem it unnecessary to go into an examination of the struggle that has been carried on between the English common law and admiralty courts, with respect to the extent of the jurisdiction of the latter. Much of that controversy grew out of the different constructions given in the one court and in the other to certain English statutes which we have not in this country. But with respect to contracts, over which the admiralty has jurisdiction, the common law courts in England have yielded in some measure to the doctrine of the admiralty, that the jurisdiction depends in a great measure upon the subject matter of the contract. This principle was recognised by Mr. Justice Buller, in the case of Menetone v. Gibbons, 3 Term R. 267. But we must look to our own constitution and laws to ascertain the extent of this jurisdiction. By the constitution of the United States the judicial power extends to all cases of admiralty and maritime jurisdiction. And by the judiciary act of September 24, 1789 [1 Stat. 73], cognizance was given to the district courts of all civil causes of admiralty and maritime jurisdiction. Without undertaking to define the precise extent of this clause, "all cases of admiralty and maritime jurisdiction," I think I may safely say, the terms are broad enough to embrace all maritime contracts,

and if so, by the judiciary act, cognizance thereof is given to the district courts.

What are the contracts then, that properly fall under the denomination of maritime contracts? And here again I would not be understood as attempting to prescribe the limits of this class of contracts; but so far as my researches have extended, all civilians and jurists agree, that marine hypothecations fall under this denomination; and that a bottomry bond is such hypothecation admits of no doubt. And why should there upon principle be any difference as to the jurisdiction of the court, whether the bottomry bond is given by the owner or the master? If the jurisdiction depends upon the subject matter of the contract, this is the same whether the pledge is given by the one or the other: The object and effect of the bond are the same in both cases, creating a lien upon the vessel. And it would be a little singular if the master in this respect had greater powers than the owner; this would be giving to the agent an authority beyond his principal; reversing the established law in relation to principal and agent. The master acting as an agent is limited and restricted in his power, and can pledge his vessel only in case of necessity for the purpose of repairs and other things indispensable to the prosecution of the voyage. It is for the convenience of commerce, that he should have authority to pledge his vessel for the security of a foreign creditor, who might furnish the means of relieving his necessities. But such power ought to be well guarded, and confined to cases coming within the reason of the rule. It is therefore incumbent on the creditor to show that the advances were made for repairs and supplies necessary for effectuating the objects of the voyage, or the safety and security of the vessel. The master would, therefore, have no right to pledge the vessel for advances to purchase a cargo.

Had the bond in question been given by the master only, it would not have created a valid lien, for the advance was made for the purchase of cargo. But there is no such limitation upon the authority of the owner; he has the absolute control over his property, and has a right to pledge his vessel for money borrowed for any purpose, to be applied to repairs, outfits, or other necessaries, or to the purchase of a cargo.

The essential difference between a bottomry and a simple loan is, that in the latter the money is at the risk of the borrower, and must be paid at all events; in the former, it is at the risk of the lender during the voyage, and the right to demand payment depends on the safe arrival of the vessel. The perils of the sea being at the risk of the lender, gives the right of reserving any rate of interest the parties shall agree upon, without incurring the penalties and consequences of usury. By the bond in question, no interest whatever is stipulated. The reason of this has not been explained. It is perhaps reasonable to conclude, that the marine interest was included with the advance, and inserted in the bond as principal, for it can hardly be supposed that the lender gratuitously took upon himself the perils of the sea; his right to claim the money, at all events, depends, according to the terms of the bond, upon the contingency of the arrival of the vessel in the port of New-York, and no marine interest is now claimed. In the case of The Barbara (4 C. Rob. Adm. 1) the bond, as in this case, was given by a person who was both master and owner, and no objections appear to have been made to the jurisdiction of the court on this account. But proceedings were instituted and carried on in the admiralty, as a case within the admitted and ordinary jurisdiction of the court. This question has not, to my knowledge, ever come under the consideration of the supreme court of the United States. But so far as it has come incidentally before our courts, in this country, the admiralty jurisdiction appears to be sustained. And indeed I have not discovered any intimation to the contrary.

Doubts have been entertained whether a bottomry bond, executed by the owner, in his own country, might be enforced by admiralty process, because the owner might execute an express transfer or mortgage of his vessel, should his necessities require it. [Blaine v. The Charles Carter] 4 Cranch [8 U. S.] 328. And it may be said he can do this in a foreign country. But it would not be consistent with sound policy, and the interest of commerce, to impose upon the owner the necessity of selling his vessel in a foreign country, which must of course be attended with great sacrifice. In the case of Wilmer v. The Smilax [Case No. 17,777], the district court of Maryland sustained the admiralty jurisdiction, upon a bottomry bond, given by the owner of the vessel, even in one of our own ports. And the same principle is recognised in the case of Corish v. The Murphy, 2 Browne, Civ. & Adm. Law, Append. 22. The books furnish us with very few cases on this point, probably, because when the owner himself is with his vessel, he will have it in his power in some way to relieve his necessities, without submitting to the sacrifice of paying bottomry interest. I cannot, however, see any objection upon principle, under the provisions of our constitution and laws, against sustaining the jurisdiction. It is clearly a maritime contract. The vessel is pledged for the payment of the money. The principal was put at hazard, and the risk of the voyage assumed by the lender. The bond was executed abroad, and the contingency upon which the money became due has happened. I think, therefore, the court below erred in dismissing the libel.

The next inquiry is, whether this claim is to be preferred to that which grows out of the mortgage given to Daniel Young upon this vessel; and that it is, would seem to follow as a necessary result from my conclusion

as to the first point. Abbot in his treatise on Shipping (part 2, c. 3, § 28), and for which he rests upon the authority of Bynkershook, says: "It should be observed of these securities (bottomry bonds) in general, that if they are given at different periods of a voyage, and the value of the ship is insufficient to discharge them all, the last in point of date is entitled to priority of payment, because the last loan furnished the means of preserving the ship, and without it the former lenders would entirely have lost their security" and this principle is sanctioned by Mr. Justice Story in the case of The Jerusalem [Case No. 7,294], who lays it down as an established rule, that a second bottomry bond, although posterior in time, has priority of claim. The present case, however, does not require the adoption of so broad a principle. The adversary claim here is not founded upon a bottomry bond, but upon a bill of sale in the nature of a mortgage, and which would not create any valid lien as against a subsequent bona fide purchaser or incumbrancer, without notice. William H. Young was permitted to remain in possession, and to act as the absolute owner of the sloop; the register, and all her papers, standing in his name, and without any endorsement, showing any incumbrance upon the vessel: Daniel Young is therefore chargeable with negligence, in permitting William to appear as absolute owner, and thereby putting it in his power to impose upon a foreign creditor, who should advance money upon the security of the vessel. Upon the principles of the common law, as well as of equity, the claim of Daniel Young must be postponed to that of the libellant.

The decree of the district court must accordingly be reversed, and a decree entered, that the proceeds of the vessel be paid over to the libellant towards satisfaction of his claim.