## FORCE *v.* THE SHIP PRIDE OF THE OCEAN, etc.

*(District Court, E. D. New York.   June 26, 1880.)*

1. BOTTOMRY CONTRACT — MARITIME INTEREST. — An agreement for maritime interest is not a necessary element in a contract of bottomry.

2. SAME—WHEN LOAN DUE.—A loan payable 10 days after the arrival of a ship at its ports of destination, becomes due and payable when the voyage has been broken up by the negligence and omissions of the master.

3. SAME—COLLISION—MARITIME LIENS.—A claim for damages caused by a collision occurring during the voyage, is entitled to preference over a bottomry loan made upon the same voyage, prior to the happening of such collision.

*Sidney Chubb,* for libellants.

*W. W. Goodrich, E. L. Owen* and *Hill, Wing & Showdy,* for intervenors.

BENEDICT, D. J.   This cause comes before the court upon exceptions to a libel, filed under the following circumstances: On the tenth day of October, 1879, the ship Pride of the Ocean was proceeded against in this court by the owners of the schooner George W. Andrews, to recover the damages caused to that vessel by a collision with the ship Pride of the Ocean, which occurred on the high seas on the third day of August, 1879.

The said action proceeded to a trial, and resulted in a decree condemning the Pride of the Ocean for the damages aforesaid.   Subsequently to such interlocutory decree the ship was sold by order of the court as perishable, and the proceeds were brought into the register.   The net proceeds of such sale amount to the sum of about $5,500, while the

claim for damages caused by the collision amount to the sum of $17,000.

Immediately upon the entry of the order for the sale of the ship, in the action already referred to, this action was commenced against the ship by filing a libel, wherein the following facts are averred:

The ship Pride of the Ocean, previous to setting sail upon her last voyage for which she had then been chartered, was in need of supplies and repairs to enable her to undertake the voyage aforesaid, whereupon her master, being without money or credit, to obtain the same applied to one C. W. Bertaine for a loan of money upon the credit of said ship to enable him to procure such supplies and repairs. Bertaine agreed to make such loan, and accordingly, on the first day of August, 1879, advanced to the master of the ship, upon the agreement and for the purpose aforesaid, the sum of £736, and received from said master the following instrument:

"£736 stg.    New York, August 1, 1879.

"Ten days after arrival at port of destination of the British ship Pride of the Ocean, of which I am master, now lying at New York and loaded with refined petroleum, and ready to sail for London, I promise to pay to the order of C. W. Bertaine, Esq., $736 British sterling, in approved banker's demand bills on London, value received, for necessary disbursements of my vessel at this port, for the payment of which I hereby pledge my vessel and freight; and my consignees at the port of destination are hereby directed to pay the amount of this obligation from the first amount of freight received for account of my said vessel. Any other draft or obligation by me drawn at this port on said freight will be secondary to this.

[Signed]    "Thomas Welsh,
"Master of ship Pride of the Ocean."

This instrument was thereafter assigned to the present libellants, W. M. Force & Co., and the following day, being August 2, 1879, the ship sailed for London upon her voyage. On the next following day, being August 3, 1879, while the

ship was prosecuting her aforesaid voyage, she met with the collision which formed the subject of the action by the owners of the schooner George W. Andrews, to which reference has already been made. In the collision the schooner was sunk, and the ship so injured that she was compelled to put back to New York, where, upon her arrival, she was immediately seized, at the instance of the owners of the George W. Andrews, to recover for the loss of the schooner, and was thereafter condemned to be sold in such action as already described.

Upon these facts the present libellants claim to be entitled to be repaid the amount of the loan out of the proceeds of the sale of the ship, and to be entitled to priority over the claim of the owners of the George W. Andrews in the distribution of the proceeds of the sale of the ship.

In this action by Force the owners of the schooner George W. Andrews have intervened for their interest in the proceeds of the ship, and, by exceptions to the libel, have raised various questions that are now to be determined.

In the first place, they contend that the instrument set forth in the libel of Force does not show a contract of bottomry, and does not entitle the libellant to enforce his demand against the ship. The ground of this contention is that there was no agreement for maritime interest, and the transaction was simply a draft against freight.

Upon this question I remark that the character of the contract set forth in the libel must be determined from the terms of the instrument and the circumstances under which it was made, as those circumstances appear in the libel. The circumstances stated in the libel, which on this occasion must be taken to be truly set forth, show the contract to be one of bottomry, unless it be that an agreement for maritime interests is a necessary element of such a contract. But such is not the law. The absence of an agreement for maritime interest is a significant circumstance, always to be taken into consideration in determining whether the loan was in good faith made upon the risk of the voyage, but it is not conclusive proof that no maritime risk was assumed. In this case the libel avers that the loan was made upon the risk of

the voyage, and upon the face of the contract set forth it appears that the repayment of the loan was dependent upon the arrival of the vessel at the port of destination.

I see no ground, therefore, upon which to deny to this contract the character of a loan upon bottomry. No case in this country has been found that can be cited in support of this conclusion, and, so far as I am informed, this is the first instance in this country where the legal character of the instrument under consideration has been called in question. But the instrument before the British admiralty, in the case of *The Cecilie,* (Law Rep. 4 Prob. Div. 210,) was very similar to the instrument here in question, and the ruling of the court in that case goes far to sustain the conclusion that the contract set forth in the libel is, in legal effect, bottomry.

It is next contended in behalf of the intervenors that upon the facts stated in the libel the loan has not become due, and, therefore, cannot be enforced against the ship. The libel shows that the voyage described in the agreement has been broken up, not by any act of the lender, but because the borrower occasioned the loss of another man's vessel and omitted to pay therefor. The collision that gave occasion for the seizing of the ship has been held to have arisen from the negligence of the master of the ship. It was open to the borrower to prevent the condemnation of the ship by paying the damages caused by the collision or by substituting a stipulation in place of the ship. He elected to do neither, and the necessary result is to prevent the accomplishment of the voyage, upon the risk of which the money claimed by the libellants was loaned. Under such circumstances it can hardly be doubted that the loan has become due and enforceable against the ship.

The next position taken in behalf of the intervenors is that the libellant can have no interest in the proceeds of the sale of the ship superior to theirs, because they were the first to proceed against the ship, and prior to any steps taken by the present libellants they had obtained a decree condemning the ship to be sold to pay their demand, by which decree it is insisted the ship and her proceeds, so far as necessary for

the purpose, became appropriated to the payment of their demand to the exclusion of any other demand. It may be doubted, perhaps, whether the proceedings had will permit the intervenors to insist upon this position, because of the intervention of those libellants which has been effected in the collision case. But any consideration of the effect of that intervention, or of the decree that was rendered in the collision case, is rendered unnecessary for the reason that I hold the claim for damages caused by the collision entitled to preference over the libellants' claim, without reference to any right obtained by the decree.

A good reason for a distinction between a claim for damages arising out of a collision occurring during the voyage, and a bottomry loan made upon the same voyage, prior to the happening of the collision, is stated in the case of *The Almi* (1 W. Rep. 118) in the following language:

"The creditor in damage has no option, no caution to exercise; the creditor on mortgage or bottomry has. He may consider all possible risks, and give credit or not as he may think most advisable for his interest. He has an alternative; the creditor in damage has not." I am aware that the preference of a creditor in damage over a lender on bottomry has been considered by some to rest upon the general rule of the admiralty, that maritime liens are paid in the inverse order of their inception. *The American*, 6 Law Rep. U. S. 277. But it seems to me that the reason of the general rule fails when the demand competing with a bottomry arises out of a collision, for I cannot conceive it possible to say that a prior lender on bottomry has derived any benefit from a subsequent collision. The value of the lender's security cannot be enhanced by a subsequent collision, nor could such a collision in any way tend to preserve the lender's security for him, but the contrary.

I therefore prefer to rest my decree upon the ground above stated, rather than upon the general rule of the admiralty to which reference has been made. It may also be that a further ground for awarding a preference to the creditor in damage is to be found in public policy, as is intimated in the

case of *The Almi*, already referred to; and still further if, as these libellants contend, their demand became due upon the entry of a decree in favor of the creditor in damage and not before, it may follow that their right to payment out of the proceeds of the sale, as fixed by the decree, must, for that reason, be subject to the right of the libellant in whose favor the decree was made.

These suggestions are made as worthy of consideration, but I rest my decision upon the ground before stated, that a lender of money upon bottomry is a voluntary creditor, who, for the advantage to be derived therefrom, and with knowledge of the risks attending the voyage, deliberately enters into a contract with the ship, and, moreover, is permitted to obtain compensation for the risk assumed by exacting a maritime premium, while the relation to the ship of him whose demand arises out of a collision is involuntary. It is created by circumstances over which the creditor in damage has no control, and he can receive no compensation for the risk.

Nor is the case altered by the fact that in this instance the lender is not shown to have exacted a maritime premium for the risk. If no such premium was taken, it is only because the lender saw fit not to take it. His right to exact it was clear; but, if his contention be correct, he did not exact the premium, for he has here insisted that, "when no intent at premium is expressed on the face, the customary, reasonable, and logical conclusion is that it is included in the principal named." The right of the assignee of such a contract as this libel sets forth to maintain the action seems undoubted. In the case of the Cecilie, already cited, the action was brought by an assignee.

My conclusion, therefore, is that the libel is bad, so far as it asserts a claim to be paid out of the proceeds of the ship in preference to the claim of the owners of the schooner George W. Andrews for the loss of their vessel by the collision referred to, but that in other respects it is good.