[No. 3797.   Decided March 22, 1901.]

THEO. H. DAVIES & CO., LIMITED, *Appellant,* v. A. H. SOELBERG *et al., Respondents.*

SHIPPING — BOTTOMRY BOND — COLLATERAL SECURITY — LIABILITY OF OWNER ON LOSS OF VESSEL.

Where the master of a steamship gave a bottomry bond upon a vessel, her cargo and freight, to cover advances made to enable her to pursue her voyage, at the same time drawing a draft upon the owners for the amount of the bottomry bond; and on the day following the execution of the bottomry bond and draft another bond was executed by an attorney in fact of the owners to secure

said draft, in which it is recited that the consideration therefor is the acceptance by the obligee of a bottomry bond to secure the sum advanced; the three instruments must all be considered as part of one transaction, governed by the rule applicable to the bottomry bonds, whereby the owners' liability is dependent on safe arrival of the vessel in port; and hence, where the vessel was lost, the bond given by the owners to secure the draft included in the bottomry obligation did not create any personal liability against them.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Affirmed.

*Struve, Allen, Hughes & McMicken,* for appellant.

*Ballinger, Ronald & Battle* and *Burke, Shepard & Mc-Gilvra,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—The defendants in the year 1898 were operating the vessel "City of Columbia" between Seattle, Washington, and Honolulu, Hawaiian Islands. Arriving at the port of Honolulu in the month of October, 1898, her voyage not being prosperous, the said vessel became embarrassed, and was libeled by plaintiff, and seized by the marshal of the courts of said islands, on account of water, supplies, coal, and other necessary expenses amounting to $5,686.76. The master, Walter S. Milnor, not being provided with sufficient funds, and not being able to procure the same to relieve the said ship, defendants sent the defendant J. P. Jacobsen, as their agent and attorney in fact, from Seattle to Honolulu, to relieve the said ship from her embarrassment, so that she might leave said port on her return voyage. On the arrival of Jacobsen at Honolulu, he and said master and plaintiff entered into an agreement upon which the ship was released from custody and proceeded on her way. Meeting severe weather, she was thereafter compelled to,

and did, put back to said port, and was thereafter lost and has not yet returned to the port of Seattle. It is admitted by the pleadings that the agreement mentioned resulted in the following contracts, viz.: On October 28, Walter S. Milnor, master of said vessel, executed a bottomry bond as follows:

"To all to whom these presents shall come: I, Walter S. Milnor, Master of the American steamship 'City of Columbia,' now lying in the port of Honolulu, in the Hawaiian Islands, send greeting:

"Whereas, I, said Walter S. Milnor, Master of the aforesaid steamship, now in prosecution of a voyage from Seattle, in the state of Washington, to the ports of Hilo and Honolulu, in the Hawaiian Islands, and return to said port of Seattle, having been detained in said port of Honolulu by attachments issued by the Circuit Court of the First Circuit for said Islands, upon certain libels filed in said court;

"And, whereas, I, as such master, have drawn a bill of exchange of even date with these presents upon A. H. Soelberg of said Seattle, for the sum of Five Thousand six hundred and eighty-six dollars and seventy-six cents ($5,686.76) in favor of Theo. H. Davies & Company, Limited, a corporation doing business at said Honolulu, which amount of said bill of exchange was at my request advanced and expended by the said Theo. H. Davies & Company, Limited, for the disbursements necessary to be made on account of said steamship for 'coal, ballast, customs dues, water and other necessary expenditures in order to fit said steamship for sea;

"Now know ye that I, the said Walter S. Milnor, Master of said steamship 'City of Columbia,' for and in consideration of the premises and of one dollar in hand paid, by these presents do bind myself, my heirs, executors, and administrators, and also the owners of said steamship 'City of Columbia' to the just and true payment of said bill of exchange, as well as the said steamship 'City of Columbia,' her boilers, engines, machinery, boats, tackle, apparel and furniture, together with the freight now due,

and which may become due hereafter to the owner of said steamship for her present voyage, pledging and hypothecating all and singular the same to the said Theo. H. Davies & Company, Limited, their successors and assigns, for the payment in full of the said bill of exchange, according to its terms and tenor.

"The condition of this obligation is such, that if I, the said Walter S. Milnor, Master as aforesaid, or the owner of said steamship, shall well and truly pay or cause to be paid unto the said Theo. H. Davies & Company, Limited, or to their order, the full and just sum of five thousand six hundred and eighty-six dollars and seventy-six cents ($5,686.76), together with all the charges which shall become due thereupon, at or before the expiration of three days after the arrival of said steamship at said port of Seattle, then this obligation shall be void and of no effect, otherwise to remain in full force and virtue.

"In witness whereof I have hereunto set my hand and seal to three bonds of this tenor and date, one of which being satisfied the others shall be null and void, at Honolulu this 27th day of October, 1898:

(Signed)   Walter S. Milnor,        (L. S.)

Master S. S. City of Columbia."

At the same time and place said master drew a draft in duplicate upon defendant Soelberg as follows:

"Exchange $5,686.76.        FIRST.

Honolulu, Oct. 28th, 1898.

Three days after sight of this FIRST OF EXCHANGE (Second unpaid) pay to the order of Messrs. Theo. H. Davies & Co., Ltd., Fifty-six hundred and eighty-six 76-100 Dollars, and all charges for collection, value received, and charge to account of
Walter S. Milnor,
Master S. S. City of Columbia.

Payable
U. S. Gold
Coin.

To A. H. Soelberg, Esq.,
    Scandinavian & American Bank,
No. 36.        Seattle."

On the next day said Jacobsen gave to plaintiff a bond as follows:

"Know all men by these presents that we, Andrew Chilberg, Richard Chilcott, Charles L. Denny and Arabella Amunds, all of Seattle, in the State of Washington, are held and firmly bound unto Theo. H. Davies & Company, Limited, a corporation doing business in Honolulu, Republic of Hawaii, in the sum of Five thousand six hundred and eighty-six dollars and seventy-six cents ($5,686.76) to the payment whereof, well and truly to be made, we severally bind ourselves, and our respective heirs, executors and administrators, firmly by these presents.

"Witness our hands and seals, at Honolulu aforesaid, this 29th day of October, A. D. 1898.

"The condition of this obligation is such, that whereas at the request of Walter S. Milnor, Master of the steamship 'City of Columbia,' said steamship now being in said port of Honolulu, said Theo. H. Davies & Company, Limited, have advanced and paid certain amounts, to-wit: the sum of Five thousand six hundred and eighty-six dollars and seventy-six cents ($5,686.76) for necessary disbursements on account of said steamship, in order to enable her to proceed upon her voyage from said port of Honolulu to said port of Seattle, to-wit; for coal, ballast, custom house dues, water and other expenses;

"And whereas the said master of said steamship has drawn his draft upon A. H. Soelberg of Seattle, in said amount of $5,686.76, payable to the order of said Theo. H. Davies & Company, Limited, in three days after sight;

"Now, if said A. H. Soelberg shall pay, or if we shall pay or cause to be paid said draft, together with interest on the same and all charges connected therewith, within three days after the same shall have been presented at the Scandinavian and American Bank, Seattle, for payment, then this obligation shall be void, otherwise to remain in full force and virtue.

"The consideration of this obligation in addition to that implied by law, is the consent of said Theo. H. Davies & Company, Limited, at our request to permit

said steamship to proceed to sea without the payment
of the amounts advanced as aforesaid, and their acceptance
of a bottomry bond upon said vessel   to secure   said
amount in place of the immediate enforcement of their
lien.

(Signed)   Andrew Chilberg,
Richard Chilcott,
Charles L. Denny,
Arabella Amunds.

By their attorney in fact, John P. Jacobsen."

Plaintiff now brings this action against the defendant
personally for the amount of said indebtedness.   It is
admitted that the said steamship has not arrived at the
home port, and that she has been lost at sea.   The princi-
pal question raised upon this appeal is, did the execution
of the bottomry bond obliterate the bill of exchange as
a contract to be paid on three days' sight, and also the
bond guaranteeing its payment, and merge the said bill
of exchange and the bond into a contract contingent for
payment upon the safe arrival of the vessel in the home
port at Seattle?   It is admitted by the pleadings that the
bottomry bond above set out was a valid and binding ob-
ligation upon the ship.   It is also admitted that the bill
of exchange above set out was drawn at the time of the
execution of said bottomry bond, that the bond known as
the Jacobsen bond was executed the next day, and that
the execution of all these instruments grew out of one
and the same transaction.   It is also admitted in the ar-
gument before this court that a bottomry bond is not an
undertaking that the money shall be paid *in all events,*
but a loan where the lender trusts the vessel and her cargo
alone, and is not to be repaid unless the vessel returns to
port; that the borrower does not become responsible unless
the vessel survives.   It is argued, however, that the plain-
tiff was not satisfied to rely upon the bottomry bond

alone, and that the Jacobsen bond was taken as additional
security. No authority is called to our attention where
the lender may take a valid bottomry bond, and at the
same time take other security which, after loss of the
vessel, will be available in any event. The reasons for a
bottomry bond and the authorities we have examined seem
to be opposed to this doctrine.

In order to construe the contract and to determine this
question correctly, it is necessary to have a clear under-
standing of a bottomry obligation and its effect. Conkling,
in his work on Admiralty, at page 194, defines a bot-
tomry bond as follows:

"It is a contract in the nature of a mortgage pledging
the ship (or *bottom*) ; or the ship and freight; or the ship,
freight and cargo; as a security for the repayment of
money loaned. Its conditions are, that if the voyage is
performed in safety, the sum loaned, together with the
stipulated interest, shall be paid, either upon the comple-
tion of the voyage, or at the expiration of some specified
period; but that if the subject of the pledge is lost by a
peril of the sea, the lender shall lose his money also."

See, also, 2 Blackstone, 457, and 3 Kent's Commen-
tries, 354. Chancellor KENT, *supra,* says:

"The condition of the loan is the safe arrival of the sub-
ject hypothecated, and the entire principal as well as in-
terest is at the risk of the lender during the voyage. The
money is loaned to the borrower, upon condition that if
the subject pledged be lost, by a peril of the sea, the lender
shall not be repaid, except to the extent of what remains;
and if the subject arrives safe, or if it shall not have been
injured except by its own defect, or the fault of the mas-
ter or mariners, the borrower must return the sum bor-
rowed, together with the maritime interest agreed on, and
for the repayment, the person of the borrower is bound,
as well as the property pledged."

It will be seen by these definitions that, if the vessel is
lost, there is no obligation to repay, but, if she arrives

safely, the obligation has matured, and both the vessel and the owners are bound. It is also said by Conkling, *supra*, page 211:

"It is not unusual for the master, at the time of executing a bottomry bond, also to give to the lender bills of exchange on the owner for the sum borrowed; a stipulation being inserted in the bond, that if the bills are paid, the bond shall be void; and this does not affect the validity of the bond, if in fact the lender relied on it mainly for security, and would not have advanced his money without it."

It is conceded in this case that the bond dated October 27th was a *bottomry bond*, and was given by the master of the vessel from necessity, both on account of repairs and supplies, in order that she might prosecute her voyage, and on account of inability to procure the required funds in any other way. It was also given by consent of the owners. Mr. Justice THOMPSON, in the case of *The Mary*, 1 Paine, 671 (16 Fed. Cas. No. 9,187), says:

"The essential difference between a bottomry bond and a simple loan is, that in the latter the money is at the risk of the borrower, and must be paid at all events; in the former, it is at the risk of the lender during the voyage, and the right to demand payment depends on the safe arrival of the vessel."

When, therefore, the lender takes a bottomry bond, he is to the extent of his loan an insurer of the safe arrival of the vessel, and may exact any amount of interest agreed upon, and not fall within the provisions of the usury laws. 2 Blackstone, Commentaries, 457; Conkling's U. S. Admiralty, 195.

The validity of a bottomry bond given by the master of a vessel depends upon necessity, and one of the necessities is that the money cannot be obtained in any other way. 3 Kent, Commentaries, 359; *The Aurora*, 1 Wheat. 96;

*Sloan v. The A. E. I.*, 22 Fed. Cas. No. 12,946; *Rucher. v. Conyngham*, 20 Fed. Cas. No. 12,106. In this latter case the court says:

"I add to these positions, as a corollary, that an hypothecation bond must not be diverted from its original and sacred use, to the purpose of securing engagements, not at first founded merely on the credit of the ship, but for advances made on the personal credit of the owners, either voluntarily, by their consignee, agent or friend, or at their request; nor, of course, can it be given as a double security, running along with, and in aid of, a personal responsibility. The one excludes the other, and they cannot exist together."

The bond in this case was given by the master, and a draft for the amount payable at three days' sight given at the same time. Both of these instruments were given by consent of the owners, represented by Jacobsen, their attorney in fact. On the next day the owners, by Jacobsen, their said attorney in fact, executed a bond guaranteeing the payment of this draft. As we have already seen, the draft did not mature until the safe arrival of the vessel. 2 Blackstone, *supra;* 3 Kent, *supra.*

If the bottomry bond was a valid obligation at the time it was given, and the plaintiff relied upon it and accepted the same as security for the advancement, then there was no consideration for the subsequent undertaking. We are of the opinion, however, taking all the agreements into consideration, that the subsequent bond was a part of the single transaction, and that plaintiff not being content to rely upon the bottomry bond alone, but desiring other security, this Jacobsen bond was given, not for the purpose of taking away the security contained in the bottomry obligation, or to destroy the effect of it, or in any way change it, but to aid and run along with it, all the obligations depending upon the same contingency, viz.,

the safe arrival of the vessel. This view harmonizes all the instruments and, in our opinion, is clearly expresssed in the bond as follows:

"The consideration of this obligation in addition to that implied by law is the consent of said Theo. H. Davies & Company, Limited, at our request, to permit said steamship to proceed to sea without the payment of the amounts advanced as aforesaid and their acceptance of a bottomry bond upon said vessel to secure said amount in place of the immediate enforcement of their loan."

Both this and the bottomry bond were security for the payment of the draft *drawn by the master.* Both this bond and the draft were dependent upon the safe arrival of the vessel at her home port. If this bond had been intended to take the place of the bottomry bond, something should, and undoubtedly would, have been stated in it to that effect. On the other hand, it is distinctly stated that a part of the consideration for his later bond was the acceptance by plaintiff of *a bottomry bond.* The bottomry bond was security for the same draft as this one was. Under the terms of the bottomry bond, the draft did not mature until after the safe arrival of the vessel. *The Hunter,* 12 Fed. Cas. No. 6,904; *Greeley v. Smith,* 10 Fed. Cas. No. 5,750; *Maitland v. The Atlantic,* 16 Fed. Cas. No. 8,980.

If the draft depended upon the bottomry bond, and the bottomry bond upon the safe arrival of the vessel, it is clear that the subsequent bond, being additional security for the payment of the draft, did not mature until the draft became an obligation on the owner. This bond was not given to secure *a debt,* but was an obligation to pay *the draft* recited in it, and does not purport to do more. The parties to this action made their contract. They might have made the payment of the money contingent upon the safe arrival of the vessel, or they might

have drawn a draft solely upon the credit of the owners. They might have made a contract by which part of the money should be upon credit of the vessel and part of it upon credit of the owners. They chose to make it all contingent upon the safe arrival of the vessel and are bound by their contract.

Appellant argues that, since the contract did not provide for marine interest, it was such a contract as might be secured by some agreement which could be enforced in any event. This contention is probably correct. But the question here is, what was the effect in law of the contract entered into? It is true that plaintiff has alleged an oral contract entered into prior to the execution of the draft and bonds. But this contract is merged in these written instruments, and these instruments must speak the terms of the agreement, and plaintiff cannot escape the condition imposed by the agreement by these contracts taken all together as one. *Gordon v. Parke & Lacey Machinery Co.,* 10 Wash. 18 (38 Pac. 755); *Myers v. Munson,* 65 Iowa, 423 (21 N. W. 759); *Looney v. Rankin,* 15 Ore. 617 (16 Pac. 660).

If the vessel had reached port she would be liable for the payment of the draft, because the draft would have then become due; and the owners could not escape payment of the draft even if the vessel and freight were not sufficient for that purpose. But, until the draft becomes an obligation against the owners, the bond cannot be enforced, because it is conditioned for its payment only, and not for the debt. If, as is contended by appellant, the Jacobsen bond is security for the payment of the draft in any event, and an additional security therefor does not avoid the bottomry bond, and this principle is made to apply in all cases, then the lender of money upon bottomry may also secure himself in this way, and avoid

usurious obligations and the maritime risk of insurance of which the latter is one of the essentials of bottomry obligations. He can rely upon his bottomry bond upon the safe arrival of the vessel, and upon the personal responsibility of the owners in case of the loss of the vessel by perils of the sea, and thus no loan would be insecure, no matter how usurious. It is true no interest is provided for in the present case except "lawful interest and all charges connected therewith," but interest may have been calculated in advance, and included in the draft. In any event, the bottomry bond was given in this case, and it is conceded to be a valid obligation. It is held in *Force v. The Ship Pride of the Ocean,* 3 Fed. 162, that an agreement for maritime interest is not necessary to the contract, and in *The Mary,* 16 Fed. Cas., No. 9187, that where no rate of interest is expressed in the bond, "it is perhaps reasonable to conclude that the marine interest was included with the advance, and inserted in the bond as principal." The loan here must either be at the risk of the lender, in which event his payment depends upon the safe arrival of the vessel, or it must be at the risk of the borrower, in which event it is a simple loan, and the bottomry obligation void; for "the bottomry bond cannot be made to cover advances made upon the personal security of the borrower, and not upon the exclusive security of the ship; but taking bills of exchange at the same time, by way of collateral security, does not exclude the bottomry bond, nor diminish its solidity," 3 Kent, 359. *The Hunter,* 1 Ware, 251 (12 Fed. Cas. No. 6,904; *Rucher v. Conyngham, supra; Sloan v. The A. E. I., supra; The Aurora, supra; Bray v. Bates,* 9 Metc. (Mass.) 237; *Thorndike v. Stone,* 11 Pick. 183.

Under the circumstances here pleaded and admitted and the rules above stated, the bottomry obligation was not

void, and the loan must therefore have been at the risk of the lender. It could not have been at the risk of both, for if it were at the risk of the owners, it was not at the risk of the lender. It may be asked what was the profit of taking the Jacobsen bond if the bottomry bond was sufficient? An answer to this would be that in case of the safe arrival of the vessel at her home port the owners would be personally liable under this bond, and, the vessel failing to pay the draft, the defendants would be bound personally; or, if the bottomry bond should fail *on any account,* and the vessel should arrive safely at her home port, the lender would still have a binding written obligation against the owners. But it is enough to say that this court has no concern about the reasons for a contract except as the same may be considered in order to arrive at a proper construction thereof. We therefore conclude that the bottomry bond in this case was the principal obligation; that the bill of exchange and Jacobsen bond were collateral securities thereto, and all contingent upon the safe arrival of the vessel at her home port. In arriving at this conclusion we regard the instruments above named as containing the contract; that all were one transaction. Holding as we do upon this question, it is unnecessary to determine the other questions discussed in the briefs.

The judgment of the lower court must be affirmed.

REAVIS, C. J., and DUNBAR and FULLERTON, JJ., concur.