[Filed January 19, 1888.]

## H. M. LOONEY, RESPONDENT, *v.* N. H. RANKIN ET AL., APPELLANTS.

EVIDENCE — WRITING — ORAL TESTIMONY CANNOT VARY TERMS OF. — Where a written contract is perfect upon its face, parol evidence cannot be introduced to add to, alter, or vary its terms.

SAME. — In case the writing show an admission, either directly or by fair inference, the jury should be instructed to find, in reference to the matter omitted, what the parties intended to have inserted therein.

CONTEMPORANEOUS AGREEMENT. — Where several writings of even date relating to the same transaction are introduced in evidence, they should be construed as parts of the same contract.    (*Weber* v. *Rothchild*, 15 Pac. Rep. 650.)

APPEAL from Clackamas County.    Reversed.

Facts are stated in the opinion.

*Johnson, McCowan & Idleman,* and *R. & E. B. Williams,* for Appellants.

*E. L. Eastham,* and *T. A. McBride,* for Respondent.

THAYER, J. — This appeal comes here from a judgment of the Circuit Court for the county of Clackamas, recovered in favor of the respondent upon the verdict of a jury.   The action in that court was against the appellants and one M. B. Rankin jointly.   M. B. Rankin made no appearance.   The complaint was upon three causes of action.

It is alleged in the complaint that the defendants in the action, during the times referred to therein, were partners, and did business, sometimes under the name of Rankin Bros., sometimes under the name of M. B. Rankin.   That on the tenth day of November, 1882, respondent entered into a contract with defendants, whereby he agreed to render the services and labor of himself, and furnish the labor of his son, and the use of his team and wagon to defendants for the period of one year from said date, for the sum of $700, which said sum defendants were to pay respondent for the said services and labor, and the use of said team; that respondent did perform said services and labor, and furnished the labor of his son, and the use of said team for the term of one year from said November 10, 1882, as agreed upon; and that defendant had paid no part thereof.   It is also alleged in the complaint that between November 10, 1883, and January 1, 1884, respondent, at the special instance and request of defendants, paid out and advanced for defendants, sums of money amounting to $274.08; that defendants had not paid it back to him excepting $62.   And it is further alleged in the complaint that respondent furnished defendants trees and timber in 1883, of the value of $25, and that no part of the same, nor for the work and labor or use of the team, had been paid.   The respondents answered, denying their liability,

and denying that they ever entered into the alleged contract of November 10, 1882. Upon the trial the following writings were given in evidence:—

1. A receipt from M. B. Rankin to the respondent, of which the following is a copy:—

"PORTLAND, OREGON, Nov. 10, 1882.

"Received of H. M. Looney, stock, grain, and other personal property to the amount of $2,300 in full of all demands to date.

"M. B. RANKIN."

2. A paper executed by respondent to said M. B. Rankin, of which the following is a copy:—

"PORTLAND, OREGON, Nov. 10, 1882.

"In consideration of a receipt from M. B. Rankin bearing even date with this instrument, I, the undersigned, guarantee the title to the following property: All the cattle now on my farm in Clackamas County, in all twenty head, and thirty-eight hogs, two horses, seventy-eight sheep, and all the hay now on my farm, all the oats, peas, wheat, and potatoes on the farm. I further agree to let M. B. Rankin have entire control of all the proceeds of my farm, including the grain already sowed and the products of the balance of the farm, except the small lots in connection with the house, in all seven, not including the barn; but also to have the use of all farm tools now on farm, and one span of horses free of charge. And I further agree to render to M. B. Rankin my full time, and the time of my son Robertes, at any labor he may direct for the term of twelve months from the ninth day of this month.          H. M. LOONEY."

3. The following receipt from M. B. Rankin to the respondent:—

"PORTLAND, OREGON, Nov. 10, 1882.

"I, M. B. Rankin, in consideration of a bill of sale of personal property and grain made to me by H. M. Looney of the same date, agree to allow and furnish all provisions for family use he may need for the term of twelve months from the ninth day of the above month.          M. B. RANKIN."

It appears from the bill of exceptions that when the paper was introduced in evidence, called a bill of sale, the respondent was on the stand as a witness, and upon being asked what it was, made answer thereto as follows: "This is a copy of a bill of sale I gave him," referring to M. B. Rankin, "in part payment of a farm I bought of him. It had no connection with this work. This refers to the same work which I have sued for, but the work was not done under this contract." And that when the receipt for the $2,300 in stock, grain, and other personal property was introduced, said respondent stated that it was executed and delivered at the same time of his signing the bill of sale, as he termed it. The respondent, after giving testimony tending to show that the appellants and said M. B. Rankin were partners, offered to prove by his own testimony that he gave his time and services, and that of his son, and the use of his team for one year, and that said parties agreed to pay him therefor $700—$300 for himself, $300 for the work of his son, and $100 for the use of his team.

This evidence was objected to by the appellants' counsel, upon two grounds, the second one of which was that the writings showed that the service of the respondent and his son, and the use of the team, were to be rendered free of charge. The other ground need not be noticed. The court, it seems, overruled the objection so far as it related to the services of the respondent and his son, and the testimony concerning the agreement as to their services was admitted, and the appellants' counsel excepted to the ruling.

The court in its instructions to the jury charged them that if they found that a partnership did exist between said appellants and M. B. Rankin, then they would find whether or not respondent was to furnish his and his son's time and services in part payment for the farm sold to respondent by said M. B. Rankin, or whether he was to receive $600 therefor. That if they found that this time and services were to be given in part payment for said farm, then they could not allow respondent anything; but if they found that it was under an agreement that he should receive $600 therefor, they must allow him for

that amount. The counsel for appellants excepted to the instruction. The jury returned a verdict for the respondent for the sum of $810.80, which evidently included the $600.

There are several assignments of error in the notice of appeal, but the main one is the ruling upon the question of the right of the respondent to prove the agreement in regard to the said services of the respondent and his son, independent of the said writings. The services referred to are evidently those mentioned in the contract, termed the bill of sale. They seem to have been so regarded by the court in which the trial was had, and the counsel for the respondent makes no question to the contrary. And whether or not an agreement to pay, therefore, as claimed by respondent, could be proved by parol, in view of the fact that said writings were executed by respondent and said M. B. Rankin, is the question presented for our consideration. The solution of the question depends entirely upon the construction to be given to the said writings. The fact that parol evidence cannot be used for the purpose of contradicting, adding to, subtracting from, or varying the terms of a written contract, or to control its legal operations or effect, except to impeach it for fraud, or reform it for accident or mistake, is too well settled to require the citations of authorities to support it.

Another equally well-settled principle, kindred to the one above stated, is that all oral negotiations or stipulations between the parties, preceding or accompanying the execution of a written instrument, are regarded as merged in it. The reason of the rule, as explained by judges and text-writers, is, "that the parties, by making a written memorial of their transaction, have implicitly agreed, that in event of any misunderstanding, that writing shall be referred to as the proof of their act and inten-tion, that such application as arose from the paper, by jun-struction or legal intendment, should be valid and c-on them; but that they would not subject thems-stipulations beyond their contract; because if th-bound by any such, they might have added th-tract, and thus have given them a clearness-direction which they would not have by bei-

memory of a witness." And where a written contract appears on its face to be complete, no addition to or contradiction of its legal effect by parol stipulations, preceding or accompanying its execution, can be admitted any more than its alteration through the same means in any other respect. The law controlling the operation of a written contract becomes a part of it. (Cowen & Hill's and Edwards' Notes to Phillip on Evidence, note, 494, pp. 558, 560.) The rule here referred to, so far as it extends, is inflexible. But it has been held not to extend to collateral parol agreements or independent facts, which do not interfere with the terms of the written contract, though it may relate to the same subject-matter, and have occurred ·contemporaneously with, or as preliminary to the main contract in writing. (*Basshor* v. *Forbes,* 36 Md. 154; Wharton's Evidence, latter portion of § 1026, and notes thereto.) Nor does it extend to cases where there is an apparent omission or incompleteness in the contract. In such cases, what is termed suppletory matter may be supplied. This rule is recognized in the old case of *Jeffrey* v. *Walton,* 1 Stark. 267, referred to in said note, 494, of Cowen & Hill's and Edward's Notes to Phillip on Evidence.

In that case, an action was brought for not taking proper care of a horse, which the defendant had hired of the plaintiff. At the time of the hiring, the following memorandum was made: "Six weeks at two guineas, William Walton, J." Lord Ellenborough held it to be a contract incomplete on its face, and only conclusive as far as it went. He admitted evidence showing that the defendant, at the time of the hiring, agreed to be responsible for all accidents, but refused to allow any evidence to be given by the plaintiff contradicting the terms expressed. This case has been referred to a great many times by the courts as author- the exception last suggested. It is an authority, also, not necessary, in order to exempt the case from the the general rule, that the writing should expressly but the presumption of completeness. Still it a shape that it may be fairly inferred from the nething has been omitted therefrom. Parties , in such a case, to prove generally an agree-

ment made by parol, and rely upon it as a ground of recovery. They have no right to ignore the writing; though it may only be fragmentary, the proof must be confined to the matter omitted. The court in the case under consideration had no right to charge the jury in the manner it did. They should, in case the writings showed an omission, either directly or by fair inference, have been instructed to find, in reference to the matter omitted, what the parties intended to have inserted in the agreement. Their parol stipulations were of no consequence, unless they intended to include them in the writing, and inadvertently had failed to do so. But is there any apparent imperfection in the writings? Taking the several instruments between M. B. Rankin and the respondent together, and they show beyond question that the respondent was indebted to Rankin in the sum of $2,300, which appears from the parol evidence to have been a balance due upon the sale of the farm mentioned in the writings by Rankin to the respondent; that the respondent agreed that if Rankin would receive of him certain stock, grain, and personal property, to the amount of the indebtedness, and in full payment thereof, he would guarantee to Rankin the title to the stock, grain, and personal property; that he would let him have entire control of all the proceeds of the farm, including the grain already sown, and the products of the balance of the farm, except the small lots in connection with the house, in all seven, not including the barn, but also to have the use of all farm tools on the farm and one span of horses free of charge. And he further agreed to render to Rankin his full time, and that of his son, at any labor Rankin might direct, for the term of twelve months from the ninth day of the month the writings bear date, Rankin agreeing to allow and furnish all provisions for family use respondent might need during the time. I am unable to discover any ellipsis in the agreement. It appears upon the face of it complete.

The respondent's counsel argued at the hearing that it was not, and claimed that it should be supplied with a stipulation, to the effect that the respondent should receive, as compensation for his and his son's services, $600. The contract does not provide for any such compensation certainly, nor do the writings indicate

that he was to receive any; the inference therefrom is that the services were to be rendered as a part of the consideration for the acquittance of the debt. The language of the instrument signed by the respondent would plainly imply that. The last clause thereof, as follows, "And I further agree to render to M. B. Rankin my full time, and the time of my son Robertes, at any labor he may direct, for the term of twelve months from the ninth day of this month," is incapable, as I view it, of any other construction. It is equivalent to saying that in addition to what he had already promised he would render the services. If the said clause of the instrument had been to the effect that respondent would render to Rankin his time, and that of his son, in accordance with their parol understanding, evidence would have been admissible to prove what that understanding was. But there is nothing on the face of the writings from which it can be inferred that they are incomplete in any particular. The respondent was particular to have Rankin sign a paper to the effect that he would allow and furnish all provisions for family use respondent might need for the twelve months, during which the labor was to be performed. Why did he neglect to have provide compensation for his and his son's labor, if he expected to be paid therefor.

The theory that the respondent agreed in writing to render to Rankin his full time, and that of his son, for twelve months, and did not include therein the compensation he was to receive, when he expected to be paid a compensation, is unreasonable. If he had made the parol agreement he claims to have made, by which he was to be paid for his and his son's labor $600, why did he insert the clause referred to in the writing in the form of a consideration for the relinquishment of a debt? If he had merely contracted with Rankin to furnish the labor at a stipulated price, what occasion was there for inserting in the writing what appears there in regard to the subject? In that case it would not constitute a consideration for the cancellation of the said debt; it would be an independent affair, involving a simple hiring and agreement to pay wages, and constitute no inducement for giving the receipt, acknowledging payment of the debt. The respond-

ent's counsel insists that because it was provided especially in the writing, executed by the respondent, that Rankin was to have certain things free of charge, it followed that the other matters were not to be free of charge. But I do not think that circumstance in this case argues in favor of the construction contended for. The sentence in which the exemption from charge alluded to occurs reads as follows: "But also to have the use of all farm tools now on the farm and one span of horses, free of charge." The word "also" must be regarded, and when its meaning "likewise" is considered, it puts the sentence in a different light. Likewise to have the use of the farm tools and span of horses, free of charge, may imply that the other things Rankin was to have in the transaction were to be free of charge. To have the tools, and team also, "in like manner," free of charge, does not certainly tend to show that the control of "the proceeds of the farm, including the grain already sown, and the products of the balance of the farm," and the full time of respondent and son, were not to be free of charge, any more than it does to show the contrary. But we must look to the general object which the parties had in view, as indicated by the writings, in order to determine what they intended.

The respondent was owing Rankin $2,300 for the farm, and of course it was of great advantage to him to be able to discharge the debt by turning out stock instead of paying cash, consequently he was willing, if Rankin would take the stock in satisfaction of the debt, to do the other things enumerated in the writing. If it were apparent from the writing that respondent was to receive compensation for the labor, the writing would be incomplete, and the matter could be supplied by parol proof. But such is not the case. Upon the face of the writing it appears, inferentially at least, that the labor that was to be rendered was intended as a further consideration for the cancellation of the debt; and the proof of the parol agreement, whereby Rankin was to pay $600 therefor, contradicted the terms of the writing. The proof was not admissible, and the Circuit Court committed error in admitting it. The rule that parol evidence cannot be admitted for such purpose is a wholesome and righteous one,

XV. OR.—40.

and should not be relaxed. It prevents fraud and perjury. We have an example of it in this case.

The respondent in his complaint in the action, which he verified by his oath, claimed $100 for the use of the team. And at the trial he offered to testify that Rankin was to pay that sum for the use of the team, when the writing signed by him stated expressly that the use of the team was free of charge. Such recklessness deserved severe rebuke. There are other questions made by appellant's counsel as to alleged errors of the court in reference to the other counts in the complaint. If they were found to have been well taken, we would have to remand the case for a new trial. This is the second time it has been here, and I think the interest of the parties and the community demand that a quietus should be put to any further litigation of the matter. The amount of the judgment, after the $600 for the labor is eliminated therefrom, will not be so large that the law will concern itself about it, under such circumstances as mentioned.

The judgment will be modified so as to make it $600 less than the amount of the recovery.

STRAHAN, J., expressed no opinion in this case.