## INSPECTION OF SCHOOL HOUSES AS TO FIRE PROTECTION.

Common Pleas Court of Summit County.

BOARD OF EDUCATION OF AKRON v. SAWYER.

Decided, September 23, 1908.

*Constitutional Law—Fire Protection for School Houses and Other Buildings for Public Assemblage—Inspection with Reference to—Police Power to Compel Proper Precautions—Taking of Property Without Due Process of Law—Details as to Protection—Rights of Board of Education Against Arbitrary Action in Ordering Schools Closed—Injunction—99 O. L., 232—Fourteenth Amendment.*

1. The act of April 28, 1908 (99 O. L., 232), enlarging the duties of the chief inspector of work shops and factories by requiring inspection of school houses and other places of public assemblage, and authorizing him where means for safe and speedy egress are insufficient to specify such appliances, additions or alterations as are necessary to insure proper protection and require that they be installed is not a provision for the taking of property without due process of law, but is a mere requirement that such property be used in a lawful way, and is a constitutional and valid enactment.

2. The provision of this act which authorizes the closing of school houses and other public buildings pending the installation of such appliances for protection against fire as the chief inspector of work shops may have ordered, is not in excess of the police powers of the state.

3. The duty of determining what appliances and alterations are necessary for protection and safety of persons against dangers from fire in public buildings and school houses may properly be delegated to inspectors as prescribed in this act; and the fact that details as to such inspection are not fixed, but are left to be worked out by the administrative officers, does not invalidate the act.

4. While the right is not open to a state agency, as it may be to a private property owner, to claim exemption from the operation of an act prescribing duties to be performed by another state agency, yet a board of education would have the capacity to bring suit to enjoin oppressive and arbitrary acts whereby school houses are closed and school children deprived of the advantages of the public schools.

Authorities were cited as follows:

As to the constitutionality of the act.   State v. Hilden, 14 Utah, 71; State v. Coal Co., 36 W. Va., 802; Munn v. People, 94 U. S., 113; Union Pac. Ry. v. United States, 99 U. S., 700; Cooley, Const. Lim., 64; Pattison v. Yuba Co., 13 Cal., 175; Leonard v. Wiseman. 31 Md., 201; Weller v. State, 53 Ohio St., 77; Champion v. Ames. 188 U. S., 321.

As to interference with police powers.   Davidson v. New Orleans, 96 U. S., 97; Meeker v. Van Rensselaer, 15 Wend., 397; Ferguson v. Selma, 43 Ala., 398; Montgomery v. Hutchinson, 13 Ala., 573; Rose v. King, 49 Ohio St., 213.

As to questions involved.   Cincinnati v. Steinkamp, 54 Ohio St., 284; L. S. & M. S. Ry. v. Railway, 30 Ohio St., 607; Pennsylvania Co. v. Wentz, 37 Ohio St:, 333; L. S. & M. S. Ry. v. Sharpe, 38 Ohio St., 150; Powell v. Commonwealth, 114 Pa. St., 265; State v. Addington, 77 Mo., 110; State v. Gas Light & Coke Co., 34 Ohio St., 572; Budd v. New York, 143 U. S., 517; Mugler v. Kansas, 123 U. S., 623; N. Y. & N. E. Ry. v. Bristol, 151 U. S., 556; 3 Tiedman, State and Fed. Control of Persons and Prop., Article 150; Commonwealth v. Roberts, 155 Mass., 281; People v. D'Oench, 111 N. Y., 359; Wadleigh v. Gilman, 12 Me., 403; Welsh v. Hotchkiss, 39 Conn., 140; Vanderbilt v. Adams, 7 Cow., 349; Knoxville v. Bird, 80 Tenn. (12 Lee), 121; Fiske, Ex parte, 72 Cal., 125; Brooklyn, In re, 87 Hun., 54; Klinger v. Bickell, 117 Pa. St., 326; King v. Davenport, 98 Ill., 305; Champaign County v. Church, 62 Ohio St., 318; State v. Powell, 58 Ohio St., 324; Palmer v. State, 39 Ohio St., 236; State v. Telephone Co., 36 Ohio St., 296; Roth v. State, 51 Ohio St., 209; Cincinnati Gas Light & Coke Co. v. State, 18 Ohio St., 237; State v. Pipe Line Co., 61 Ohio St., 520; C., H. & D. Ry. v. Sullivan, 32 Ohio St., 152; Davis v. State, 19 Ohio St., 270; Marmet v. State, 45 Ohio St., 63; Walker v. Cincinnati, 21 Ohio St., 14; State v. Nelson, 52 Ohio St., 88.

Can a board maintain such an action?   Hopewell Township v. Guy, 64 Ohio St., 434; Buckingham v. Buckingham, 36 Ohio St., 68; Moody v. Arthur, 16 Kans., 419; Trustees v. Thoman,

51 Ohio St., 285; High, Injunctions, Section 573; Gallia County v. Holcomb, 7 Ohio (pt. 1), 232; Putman v. Valentine, 5 Ohio, 187; Cornell v. Guilford, 1 Denio, 510; State v. Powers, 38 Ohio St., 54; Hamilton County v. Mighels, 7 Ohio St., 109; C., W. & Z. Ry. v. Clinton County, 1 Ohio St., 77; Hunter v. Marion County, 10 Ohio St., 515; Finch v. Board of Education, 30 Ohio St., 37; State v. Davis, 23 Ohio St., 434; Neil v. Agricultural College, 31 Ohio St., 15; State v. Covington, 29 Ohio St., 102; Cincinnati v. Volk, 72 Ohio St., 469; State v. Gardner, 54 Ohio St., 24; Reeves v. Griffin, 29 Bull., 281; Thorpe v. Railway, 27 Vt., 140; Salem v. Railway, 98 Mass., 431; Train v. Boston Disinfecting Co., 144 Mass., 523; Commonwealth v. Alger, 61 Mass. (7 Cush.), 53; Treasurer v. Bank, 47 Ohio St., 503; Cincinnati v. Bryson, 15 Ohio, 625; Brown, In re, 6 N. P., 178; Squires v. Weimer, 19 C. C., 736; Stevens v. State, 61 Ohio St., 597; Gibbons v. Institute, 34 Ohio St., 289.

*Grant, Sieber & Mather* and *E. F. Voris,* for plaintiff.

*N. M. Greenberger,* City Solicitor, *J. Taylor* and *O. E. Harrison,* for defendant.

DOYLE, J.

The plaintiff alleges that it was notified by the inspector of work shops and factories to equip certain school buildings under its control "with divers fixtures, appliances and contrivances, called fire escapes and things appertaining thereto, ostensibly and pretendedly to promote the bodily safety and protection of the pupils to be attendant upon the said schools."

Thereupon the plaintiff "caused a due and adequate inspection of each and all said buildings to be made by its own members in person and by competent mechanics and architects, with sole and especial regard to making the said buildings" safe in all ways for the free exit of persons therein in case of fire.

Plaintiff did not follow the directions of the inspector, but made contracts for such fire escapes as it deemed necessary, and alleges that to this extent it attempted to obey the orders of the inspector. As to the other buildings, plaintiff claims that the fire escapes with which they are already equipped are adequate

for the safety of all persons who may be in any of said buildings in case of fire, and for all the uses and purposes of the statute, and the expenditure of money required to further carry out and obey the order of the inspector "would be unnecessary and wholly wasted, without any compensating public advantage or benefit whatever."

The defendant pursuant to the statute threatened to prohibit the opening and occupancy of said school buildings until all of said fire escapes and fixtures as ordered by the inspector were provided.

This action was brought to enjoin the defendant from preventing the use of the school houses in question. It is alleged that defendant at the instance of the chief inspector of work shops and factories has taken said action; that such inspector and defendant in that behalf are acting arbitrarily, oppressively and unlawfully; and that the statute under which they are assuming to act, in so far as it purports to confer such arbitrary, oppressive or unconscionable powers or to authorize such useless expenditure of public money, is unconstitutional and void.

It is further urged that if the orders of the defendant are carried out it will deprive the children of the city school privileges which will be a public calamity, and be a punishment to them for something of which they are not at fault, and will be a taking of property of the plaintiff and said city without due process of law and in violation of the Constitution of the United States and its amendments.

The defendant demurs to the petition on the following grounds: first, that the court has no jurisdiction of the subject of this action; second, that plaintiff has no legal capacity to sue; third, that the petition does not state facts sufficient to constitute a cause of action.

The first two grounds of the demurrer will be passed upon in connection with the third ground.

The petition attacks the authority of the defendant on one point, that the act under which he acts is unconstitutional in that it provides for a taking of property without due process of law. This point was the one most carefully and persistently discussed by counsel and is of vital importance in this case.

Section 1 of the Fourteenth Amendment to the Constitution of the United States provides: "nor shall any state deprive any person of life, liberty, or property, without due process of law."

"Due process of law is process due according to the law of the land. This process in the states is regulated by the law of the state." *Walker* v. *Sauvinet*, 92 U. S., 90, 93.

Legislation is not open to the charge of depriving one of his rights without due process of law, if it be general in its operations upon the subjects to which it relates, and is enforcible in the usual modes established in the administration of government with respect to kindred matters; that is, by process or proceedings adapted to the nature of the case. *Dent* v. *West Virginia*, 129 U. S., 114.

Due process of law and the equal protection of the laws are secured, "if the laws operate on all alike, and do not subject the individual to an arbitrary exercise of the powers of government." *Duncan* v. *Missouri*, 152 U. S., 377; *Leeper* v. *Texas*, 139 U. S., 462.

The Fourteenth Amendment to the Constitution of the United States was not designed to interfere with the power of the state to exercise its police powers to prescribe regulations to promote the health, peace, morals, education and good order of the people, and to legislate so as to increase the industries of the state, develop its resources and add to its wealth and prosperity. *Barbier* v. *Connolly*, 113 U. S., 27; *Mugler* v. *Kansas*, 123 U. S., 623; *Kemmler, In re*, 136 U. S., 436.

"The state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the Legislature to determine not only what the interests of the public require, but what measures are necessary for the protection of such interests." *Lawton* v. *Steele*, 152 U. S., 133, 136; *Phillips* v. *State*, 77 Ohio St., 214, 217.

It is a generally recognized proposition that the states possess certain powers never surrendered to the general government, and among these powers are the right to legislate for public health, public morals, public safety, for the general and com-

mon good and for the well-being, comfort and good order of the people. The power of the state may be exerted over these subjects without limit, except as it is restrained by the Constitution of the United States or its own constitutional restrictions. *Western Turf Assn.* v. *Greenberg*, 204 U. S., 359, 363; *Hartford Fire Ins. Co.* v. *Railway*, 175 U. S., 91.

The act of April 28, 1908 (99 O. L., 232), entitled, "An act to enlarge the powers of the chief inspector of work shops and factories in the matter of public schools and other buildings, and to increase the number of district inspectors," is the one under which defendant was threatening to act.

This act provides that the chief inspector of work shops and factories shall cause the district inspector to inspect all school houses and other buildings stated therein, used for the assemblage or betterment of people, with special regard to the precautions taken for the prevention of fires, and the provision of fire escapes, exits, emergency exits, hallways, air space, and all other matters which relate to the health and safety of those occupying or assembling in such structures.

The district inspectors are required to file written reports of their inspection with the chief inspector, and if such district inspector shall find that necessary precautions for the prevention of fire or other disaster have not been taken, nor means provided for the safe and speedy egress of the persons who might be assembled therein, said report shall specify such appliances, additions or alterations as are necessary to provide such precautions and protection.

It is then the duty of the chief inspector to notify the owner or person having control of such structure of the appliances, additions or alterations necessary to be added to or made to such structure.

The statute further provides:

"Upon receiving said notice it shall be the duty of the owner or person in control of such structure to comply with each and every detail embodied therein."

It is made the duty of the mayor, with the aid of the police, "to prohibit the use of said structure for the assemblage of

people until'' the recommendations of the report are complied with.

While the statute does not provide for any direct taking of the substance of the property nor a sequestration of the issues therefrom, nor a deprivation of the use thereof for the benefit of any particular person, it does provide that the owner or the one 'having control shall be prohibited from using it. This is for the benefit and safety of those whom business, duty, necessity or pleasure may cause to assemble at such place and for the general benefit, in that it tends to the peace of mind of the community by providing immunity from the horrors of accidents at such places.

This is not a taking of property nor depriving the owner of the lawful use of it, but simply requires him to use it in a lawful manner. *Cincinnati* v. *Steinkamp*, 54 Ohio St., 284, 289.

Is the necessity for immediate action such that the state may immediately close the structure until the measures of safety prescribed by its officers have been carried out? Has the state, in the exercise of its police power, the right in this instance to deprive the owner of the use of his property until its orders are obeyed? Is the necessity such that the owner must suffer loss for the general good and peace of mind of society and the safety of the inmates of the buildings in question?

The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. There can be no serious contention over the right of the state to exert its police powers to prescribe rules for building, construction and equipment to insure the safety of the public and the occupants.

The contention in this case is over the manner in which the state has attempted to exercise that power. It has delegated to an officer, the inspector, the important function of determining whether the ''necessary precautions for the prevention of fire or other disaster'' have been taken, and whether means have been provided for the safe and speedy egress of the persons who may be assembled therein and to specify what ''appliances,

additions or alterations are necessary to provide such precautions and protection.''

The rights of the property owner can not be subjected to the caprice nor the arbitrary decision of an official, nor can it be subjected to an unreasonable regulation, but the circumstances of each class or case must determine the reasonableness of the regulations prescribed.

In the matter of taxation and the making of assessments the owner must have notice and an opportunity to be heard. In *Londoner* v. *Denver*, 28 Sup. Ct. Rep., 708, decided by the Supreme Court of the United States at October term, 1907, the authorities are cited.

The courts, however, have made a distinction between matters of taxation and the appropriation of property for public uses, and cases where the state exerts its police power. The delays incident to notice and hearing in taxation and appropriation cases work no hardship or danger to the public. The due process of law in executing the police power of the state is of necessity of a different kind. The exigencies of many cases require immediate action. When the public health or safety is in peril, the process of action for relief must be swift. An impending disaster requires prompt administrative action. The public authorities may destroy buildings in the course of a conflagration, to arrest its further progress, destroy property to prevent spread of pestilence and act swiftly on many other occasions of public calamity. Cooley, Const. Lim. (7th Ed.), 877.

So a particular use of property may be forbidden where by a change of circumstances or for any other good reason, without the fault of the owner, that which was once lawful, proper and unobjectionable has become a menace to the public health or safety. So may dangers and nuisances which have long been permitted, be abated when the public conscience of the state has aroused official action.

An act of this state which required owners of certain buildings, upon notice from the inspector, to put up suitable fire escapes was held not to be a taking without due process of law

in *Cincinnati* v. *Steinkamp, supra*.  Thé law passed upon in
that case was enacted February 28, 1888 (85 O. L., 34), and
provided that the inspector should determine the location and
numbers of the fire escapes and the material therefor and man-
ner of construction.   Being of a general nature and not having
uniform operation throughout the state, it was held unconstitu-
tional on the ground that it violated Article II, Section 26 of
the Constitution of Ohio; but upon the question of due process
of law the court held it would have been constitutional, and this
even though the act had not provided for enforcing the orders
of the inspector by a suit in equity.   Reading from the dictum
of Judge Spear in *Cincinnati* v. *Steinkamp, supra*, I quote from
page 290:

"The enactment is but the exercise of the police power of
the state, that power which is characterized by Mr. Justice
Gray, in *Leisy* v. *Hardin*, 135 U. S., 127, as 'that inherent and
necessary power, essential to the very existence of civil society,
and the safeguard of the inhabitants of the state against dis-
order, disease, poverty and crime,' and necessarily extends 'to
the protection, health, comfort and quiet of all persons and all
property within the state.'   It no more denies to the owner
the use of his property than do those acts known as building
laws, which forbid the erection of frame structures within pre-
scribed limits, or define the thickness, and strength of walls,
bearers, girders, etc., or direct the demolition of structures
falling to decay, or otherwise endangering the lives of passersby,
which acts so far as they are reasonable in their character, and
adapted to accomplish the purpose for which they are designed,
are uniformly held to be within the constitutional authority of
the General Assembly in its just exercise of the police power
of the state."

From page 291:

"Nor is the act open to the criticism that it violates that pro-
vision of Section 1, of Article IV of the Constitution of the
United States, which declares    *   *   *   'nor shall any state
deprive any person of life, liberty, or property without due
process of law,' for the settled doctrine is that this section does
not abridge the exercise of the police power of the states, nor
limit the subjects upon which they may legislate."

In the exercise of the police power of the state, for a purpose highly necessary in the promotion of the public health, *i. e.*, construction of a drainage system, it became necessary to change the location of the pipes of a gas company so as to accommodate them to the new public work and the cost was put on the gas company. Held not a taking of property and a proper exercise of police power. *New Orleans Gaslight Co.* v. *Drainage Commission*, 197 U. S., 453.

Statutes requiring manufacturers and sellers of mixed paints to put label on same showing constituent ingredients and quantity of each, held not violation of the Fourteenth Amendment to the United States Constitution. *Heath & Milligan Mfg. Co.* v. *Worst*, 207 U. S., 338.

A railroad is not deprived of property without due process of law by the recovery of penalties against it for violations of a valid state statute prohibiting the heating of passenger cars on other than mixed trains by stove or furnaces inside of, or suspended from the cars, except for temporary use in case of accident or other emergency, where the defendant was before the court. Harlan, J.:

"One of the assignments of error questions the validity of the statute upon the ground that it deprives the plaintiff in error of its property without due process of law. As the action against the company was instituted and conducted to a conclusion under a valid statute, the defendant being before the court, there is no reason to hold that there was any want of the due process of law required by the Fourteenth Amendment." *New York, N. H. & H. Ry.* v. *Slate*, 165 U. S., 628.

It was held constitutional to compel a railroad company to light its tracks, in *C., H. & D. Ry.* v. *Bowling Green*, 57 Ohio St., 336.

The owner of a building which he knowingly permits to be used for gaming purposes is not deprived of his property without due process of law by Section 4275, Revised Statutes, which authorizes an action to subject such building to the payment of a judgment obtained by an informer for the recovery of money lost there at play. *Marvin* v. *Trout*, 199 U. S., 212.

An act compelling a person in possession of a race track to recognize tickets of admission, and on failure to be liable to suit for damages and $100 in addition to actual damages, held not taking of property without due process. *Western Turf Assn.* v. *Greenberg*, 204 U. S., 359.

The act of the General Assembly of Ohio (90 O. L., 220; R. S., 3443-3) requiring street railway companies to provide screens for protection of motormen, held proper exercise of police power and not a taking without due process. *State* v. *Nelson*, 52 Ohio St., 88.

The establishment of limits within the denser portions of cities and villages, within which buildings constructed of inflammable materials shall not be constructed, erected or repaired, may, in some instances be equivalent to a destruction of property, but regulations for this purpose have been sustained notwithstanding this result. Cooley, Const. Lim. (7th Ed.), 878.

Prohibiting slaughter houses in certain parts of city held reasonable. *Cronin* v. *People*, 82 N. Y., 318; *Metropolitan Bd. of Health* v. *Heister*, 37 N. Y., 661; *Milwaukee* v. *Gross*, 21 Wis., 241.

Forbidding laundries except in brick or stone buildings upheld. *Yick Wo, In re*, 68 Cal., 294; *Yick Wo* v. *Hopkins*, 118 U. S., 356.

It is unnecessary to cite the many cases where the exercise of the police power by the state has been upheld, though it had provided no scheme for a hearing.

In the exercise of its right the state in many instances must vest authority in the authorities of some of the political subdivisions of the state, or in state officers, the power to make such necessary and reasonable regulations as are necessary to secure the health, safety and well-being of the community in respect to the matters legislated upon, and also in other instances to pass upon the things necessary to be done in order to carry out the provisions made in the state statutes.

There are some dangerous things to be regulated, concerning the treatment of which the Legislature can not anticipate. It can make general requirements but the details must be worked

out by some administrative officer.   See *Ozan Lumber Co.* v.
*Bank*, 207 U. S., 251, and cases cited on page 253.

Take the matter of providing for the safety of persons who
assemble in buildings, or of providing against dangers from
fires or other calamity.   If the state cares only to legislate as to
height and declares that buildings shall be limited to a certain
number of feet in height, as was the case in *Attorney-General*
v. *Williams*, 178 Mass., 330, the problem is simple.

But if the legislation is to provide for the entire safety of the
occupants so far as practicable, it would be impracticable to
frame legislation in detail to cover it.   The exposure of the
building to streets, alleys, squares, vacant lots, and other build-
ings, its height and other dimensions, openings, stairways, plans
of hallways and rooms, height of ceilings and numerous other
physical features of the structure must be taken into considera-
tion as well as the arrangement of the contents of the building,
the uses to which it is put, means of access from one part to
the other and to adjoining premises, the age, condition, and
character of the occupants, etc.   Where all these must be taken
into consideration in determining what appliances are neces-
sary to insure the safety of the occupants of the building, it
is necessary for the Legislature to delegate to some officer the
function of making these determinations.

The act in question in this state has imposed upon the in-
spector the duty of making such determinations.   Now, then,
what view have the courts taken of this delegation of authority
in the matter of police regulations, as bearing upon the ques-
tion of whether the restrictions put upon property owners by
that means are a taking of property without due process.

The Roberts law (94 O. L., 33), providing for granting li-
censes to engineers, if the examiner found the applicant trust-
worthy and competent, was held unconstitutional in *Harmon*
v. *State*, 66 Ohio St., 249, because the act provided no standard
as to qualification and no specifications as to wherein the appli-
cant shall be trustworthy and competent, but all was left to the
opinion, finding and caprice of the examiner.   There being six
examiners it would have meant a possible six separate standards.

This was held to be a delegation of legislative power and in conflict with Article II, Section 1 of the Constitution.

This law was re-enacted by act 95 O. L., 49 (Rev. Stat. 4364-89*p*), providing for an examination in the construction and operation of steam boilers, steam engines and steam pumps, and also hydraulics, under rules made by the chief examiner, which should be uniform throughout the state. This act was held constitutional in *Theobald* v. *State*, 10 C. C.—N. S., 536.

Complaint was made in this case that no standard of qualifications existed. The court said:

"In the former act no subjects for examination were mentioned. Here the statute fixes just what subjects the applicant is to be examined in. How the Legislature could have more definitely fixed what the examiners shall do is not easy to understand. If a percentage of answers had been fixed or a percentage of qualification had been fixed by the statute, it would still have been with the examiner to say what degree of qualification was indicated by any per cent. of marking."

The court cites a similar delegation of authority in Section 559 governing examinations for admission to practice law; Sections 4403 and 4403*c*, governing examinations of physicians; Section 4070 as to examination of teachers in the public schools; Section 4071*a* delegating to state commissioner of common schools authority over preparation of questions for examinations.

The federal government has authorized the Postmaster-general to hold up mail matter of persons who in his judgment are conducting a fraudulent business and for other prohibited purposes. This was held a proper delegation of authority. *Public Clearing House* v. *Coyne*, 194 U. S., 497.

Power delegated to the Secretary of War to determine when a bridge is an unreasonable obstruction to navigation and to require such changes as the government engineer may prescribe, was not unconstitutionally delegated. *Union Bridge Co.* v. *United States*, 204 U. S., 359, 364.

Under a statute authorizing a municipal corporation, when the council shall deem it necessary, to require railroad company to light its railway, a village in Ohio passed an ordinance re-

quiring a portion of a railway track to be lighted with electricity in a certain manner. Held a proper exercise of power in *C., H. & D. Ry.* v. *Bowling Green*, 57 Ohio St., 336.

An ordinance of San Francisco put into the board of police commissioners power to grant liquor licenses, and provided that they should grant it if the applicant got the written recommendation of twelve citizens owning real estate in the block or square where the business of liquor selling was to be carried on. It was held that the refusal to grant license was no violation of the federal Constitution. *Crowley* v. *Christensen*, 137 U. S., 86.

A statute of Illinois confided to state mine inspectors discretion to determine the number of times each mine should be inspected, and to regulate the charges therefor, which must be paid by the mine owner. This act was held not repugnant to the Fourteenth Amendment nor arbitrary or unreasonable. *Consolidated Coal Co. of St. Louis* v. *Illinois*, 185 U. S., 203.

Delegation of power to the American Railway Association and the Interstate Commerce Commission to fix heighth of drawbars of freight cars held not unconstitutional. *St. Louis, I. M. & S. Ry. Co.* v. *Taylor*, 210 U. S., 281; advance sheets Reports U. S. Supreme Court, October term, 1907, p. 616; 28. Sup. Ct. Rep., 616.

In *Cincinnati* v. *Steinkamp, supra,* the delegation of a discretion to the inspector to determine the location and number of the fire escapes on a building and the material out of which to be built and the manner of construction including size, shape, plan, strength, etc., was not held objectionable.

Inspectors have been clothed with discretionary powers in the following instances and the acts upheld by the courts: Cows infected with tuberculosis destroyed without compensation, *Houston* v. *State*, 98 Wis., 481; peach trees affected with "yellows" destroyed, *State* v. *Main*, 69 Conn., 123; milk of a quality below a prescribed standard destroyed, *Deems* v. *Baltimore*, 80 Md., 164; health officer may kill diseased animal, *Newark & S. O. H. C. Ry.* v. *Hunt*, 50 N. J. L., 308; to destroy nets used in violation of fishing laws, *Bittenhaus* v. *Johnston*, 92 Wis., 588.

Mining cases providing for ventilation and the erection of

structures to facilitate escape of miners in case of accident are: *Chicago, W. & V. Coal Co.* v. *People,* 181 Ill., 270; *Consolidated Coal Co.* v. *People,* 186 Ill., 134.

An ordinance giving the mayor power to determine whether a person applying for a license to sell cigarettes has good character and reputation and is a suitable person to be intrusted with their sale, but requiring him to grant a license to every person fulfilling these conditions, does not vest in him any arbitrary power to grant or refuse a license, in violation of the provisions of the Fourteenth Amendment to the United States Constitution, either in regard to the clause requiring due process of law, or in that requiring equal protection of the laws.

Regulations respecting the pursuit of a lawful trade or business, being an exercise of the police power, are within the authority of the state, and form no subject for the federal interference unless they are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily and in a manner wholly arbitrary interfered with or destroyed without due process of law. *Gundling* v. *Chicago,* 177 U. S., 183.

The determination of whether necessary precautions for the prevention of fire or other disaster have been taken, or means provided for the safe and speedy egress of the persons who might be assembled in a building, must, as heretofore pointed out, necessarily be confided to some officer.

. The Legislature could not anticipate the necessities of each case, and must confide it to some official. As was said by Judge Spear in *Rose* v. *King,* 49 Ohio St., 213, 222; "What would be proper and 'convenient' would have to be determined by the circumstances of each case." This, also, was a fire escape case arising out of Section 2573, Revised Statutes.

If the case in hand involved a private property owner, and the current authority on the subject of the exercise of the police power of the state were consulted, and followed, the court would be constrained to hold the act of April 28, 1908 (99 O. L., 232), constitutional, but the plaintiff in this case is a public body, an agency of the state, which complains of the requirements made of it by another agency of the state, and it is not in a position as

against the state to urge those considerations which might exempt a private property owner from the operation of the statute. The statute might be unconstitutional as to private owner and not as to the board of education.

Article I, Section 7 of the Constitution of the state provides that "It shall be the duty of the General Assembly to pass suitable laws * * * to encourage schools and the means of instruction."

Article VI, Section 2 of the Constitution provides: "The General Assembly shall make such provisions, by taxation, or otherwise, as * * * will secure a thorough and efficient system of common schools throughout the state."

In obedience to these mandates of the Constitution, in 1853, the General Assembly passed an act "To provide for the reorganization, supervision and maintenance of common schools" (51 O. L., 429). See Section 3885, Revised Statutes, *et seq.*, for statutes providing for a continuation and extension of that policy of the state. This system created by this act will save it icy of the state. This system created by this act was the outgrowth of and superseded the system inaugurated under the Akron School law.

The common schools of the state are the fruit of the Constitution, making a general educational system. *Finch* v. *Bd. of Education*, 30 O. S., 37; *Diehm* v. *Cincinnati*, 25 O. S., 305.

The boards of education of the state hold the property intrusted to their custody only as a public agency of the state; *Atty-Gen., ex rel Kies,* v. *Lowrey,* 199 U. S., 233, 239; 50: 167, 170.

The school districts are organized as mere agencies of the state in maintaining its public schools. *State* v. *Powers*, 38 O. S., 54, 61.

The board is simply the custodian of what the Legislature sees fit to intrust to it and is bound to use what is thus intrusted to it in the manner directed by the Legislature and not otherwise, and to deliver it up when directed. It holds property, but only for carrying out the policy of the state. It constitutes an agency by which the state carries out its policy and purposes in educating the youth of the state.

The board of education is only a *quasi* corporation (30 O. S., 37; 38 O. S., 54; 10 O. S., 515; 20 O. S., 18), an organization subject to the control of the Legislature. It constitutes the instrument by which the Legislature administers the department of the civil administration of the state which relates to education and the schools.

Any regulation the state may prescribe for the government of the schools, the care of the school property or the means of protecting the inmates of the schools must be obeyed. If it delegates to the inspector of work shops and factories the duty of prescribing ways and means tending to insure safety for the inmates of the schools or other public institutions, the orders of these inspectors become rules of conduct for the boards having charge of such institutions.

The boards can not interpose their judgments in the premises against that of the officers designated and appointed by the state for that special purpose.

If the unconstitutional provisions of an act are so interwoven with the other provisions of the act as to be inseparable, the whole act would be unconstitutional (*Harmon* v. *State,* 66 O. S., 249, 252), but otherwise a part of an act may be constitutional and the balance unconstitutional. *Pump* v. *Commissioners,* 69 O. S., 448.

In construing statutes the rule is to enforce them so far as they are constitutionally made, rejecting only those provisions which show an excess of authority by the enacting power. *Cincinnati* v. *Bryson,* 15 O., 625.

Where part of an act is separable from the remainder, its constitutionality will save it from the constitutional infirmities of the remainder. *Gibbons* v. *Catholic Institute,* 34 Ohio St., 289; *Treasurer* v. *Bank,* 47 Ohio St., 503.

A part of a section may be constitutional and another not. Sections are artificial divisions of a law. The substance and the parties and subjects respectively affected are to be considered. *Stevens* v. *State,* 61 Ohio St., 597.

Where a literal reading of an act would make it unconstitutional, but if read and interpreted in the light of the extent of the authority which the Legislature had, it would be constitu-

tional, it was held that it should be regarded as constitutional. *Coburn* v. *San Mateo Co.*, 75 Fed Rep., 520, 526.

The rejection of some of the provisions of a statute for unconstitutionality will not vary the sense or meaning of its remaining provisions, which are to be construed as well in the light of those rejected as of those which remain. *State* v. *Dombaugh*, 20 Ohio St., 167, 174.

A part of a statute may be unconstitutional and the remainder valid; whether or not the infirmity that avoids a part affects the entire act, depends upon the connection and dependence on each other of its various provisions. *Little Miami Ry.* v. *Greene County*, 31 Ohio St., 338, 444.

When the unconstitutional part is stricken out, if that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. Cooley, Const. Lim. (7th Ed.), 247.

If the act in question be construed as to its constitutionality only as it affects school houses used in the public school system of the state, and in the custody and control of the boards of education created by the state, and the asylums and other buildings in the custody and under the control of state institutions and state agencies, these are entirely separable from the other buildings mentioned and the statute may be considered as constitutional so far as it affects these objects, though it may be otherwise in so far as it affects buildings owned and controlled, and in the custody of private persons. Black, Interp. of Laws, and cases cited, pp. 96-98.

In view of that criterion of interpretation that the court must presume the constitutionality of the act, the court finds that as to the plaintiff in this suit, the act in controversy is constitutional. Black, Interp. of Laws, 93; Cooley, Const. Lim., 252, *et seq.*

If the constitutionality of the act under which the defendant has presumed to act in this case, were all that was to be considered, the demurrer should be sustained, but the petition charges that the defendant and the inspector of work shops and

factories, under whose orders the defendant has acted and threatens to act, have acted arbitrarily and oppressively.

Without regard to the question of the constitutionality of the act under which the mayor is acting, if his acts are oppressive and arbitrary, or the exactions of the officer under whose orders he is acting pursuant to the statute are unreasonable, arbitrary and oppressive, a court of equity would have jurisdiction to restrain the execution of the requirements of the inspector and the execution by the mayor of the requirement of the inspector. *Chase* v. *Middleton,* 123 Mich., 647.

It is the duty of the court under the circumstances and under the allegations of the petition, in the interests of justice and the public welfare, to inquire into the charge that these officials are acting arbitrarily and oppressively, and determine whether the plaintiff for that reason is entitled to the relief demanded. The courts have ever interposed to protect the citizen from the unnecessary, unreasonable, arbitrary, oppressive and unjust exactions of public officials.

Even in carrying out the police power of the state, such acts of officials would constitute a want of due process of law. The general power of the Legislature to determine what is necessary for the public interests and the right of its officers to execute its commands are limited only by the rights of public and private parties to have an inquiry as to the reasonableness and fairness of the exactions and whether the same are under and within the limits of the Constitution. *Phillips* v. *State,* 77 Ohio St., 214, 217.

If by any unreasonable, arbitrary and oppressive act the defendant threatens to close up any of the schools and deprive the school children of the benefits thereof, and to that extent impede the state in carrying out its policy of instruction, the board of education is the only body or person, logically, upon whom would devolve the duty of protecting the public interest in that behalf.

The plaintiff, therefore, having capacity to sue and the court having jurisdiction, and the plaintiff having complained in its petition that the acts of the defendant are unreasonable, arbitrary and oppressive, and it being entitled to have a judicial

inquiry into this matter and the petition for that reason containing facts sufficient to constitute a cause of action, the demurrer of the defendant to the petition is overruled.