Argued July 8, affirmed July 20, 1915.

# WESTERN OREGON TRUST CO. *v.* HENDRICKS.

### (150 Pac. 753.)

**Vendor and Purchaser—Avoidance of Contract—Sufficiency of Evidence—Misrepresentation.**

1. In an action to foreclose a mortgage on residence property sold to defendants by the mortgagee, evidence *held* insufficient to show any misrepresentation by the mortgagee in respect to the removal of a barn and of animals in a park zoo near the premises.

**Vendor and Purchaser—Performance of Conditions—Acceptance.**

2. Under a contract for the sale of property, providing that the vendor at his own expense should improve all the streets with hard surface pavement, the purchaser, who demanded that a pavement should be put in a street up to a declivity, admitting that it was impossible to pave the remainder of the street, after such paving had been done to his satisfaction, could not insist that the vendor do an impracticable or impossible thing.

  [As to false statement by vendor of intention to make improvement affecting property sold as fraud sufficient to avoid contract of sale, see note in Ann. Cas. 1914B, 862.]

**Vendor and Purchaser—Remedies of Purchaser—Avoidance—Burden of Proof—Breach of Conditions.**

3. In an action to foreclose a mortgage on the property sold to defendants by the mortgagee, evidence for defendants *held* not to sustain the burden of proving the mortgagee's failure to perform his contract undertaking to lay water-pipes and construct sewers, or his oral agreement to install gas service, or his oral promise of a street-car line to the property within one year from the contract.

**Evidence—Parol Evidence to Vary Writing.**

4. Where a contract for the sale of land has been reduced to writing and the mutual obligations of the parties specified, the purchaser

cannot vary or alter the written contract by showing contemporaneous parol agreements without alleging and proving that some fraud was practiced upon him to prevent such agreement from being inserted in the written contract.

[As to supplementing contract for sale of realty by proof of collateral oral agreement, see note in Ann. Cas. 1914A, 456.]

**Vendor and Purchaser—Breach of Conditions—Waiver or Acquiescence.**

5. Where purchasers objected to paying interest on their mortgage note until a car line was built to their premises, and the vendor and mortgagee gave them a writing waiving interest until the line was in operation, the purchasers, who thereafter continued to treat the property as their own, would be held to have acquiesced in the settlement offered by the vendor.

From Multnomah: William N. Gatens, Judge.

Department 1. Statement by Mr. Justice Mc-Bride.

This is a suit by the Western Oregon Trust Company, a corporation, against E. W. Hendricks and Clara D. Hendricks, to foreclose a mortgage upon lot 2 in block 2, Parkside Addition to Portland, which mortgage is to secure a promissory note for $2,000 and interest at 6 per cent, given July 10, 1909. Defendants answered, admitting the execution of the mortgage and setting up as a defense that prior to July 10, 1909, plaintiff, being the owner of the land described in the complaint, negotiated for a sale thereof to defendants. The answer then sets up a state of facts which are summarized in defendants' brief as follows:

"(1) Said property is located back of the city park, in which was an animal zoo, also an offensive stable, and certain buffaloes were kept south of Parkside.

"(2) At the time of the negotiations there was neither street-car service, water-mains, nor water supply, nor gas, nor sewer to Parkside; and as an inducement to Hendricks to make the contract of purchase, the plaintiff, through Dorr E. Keasey, represented as follows: 'That within six months from July,

1909, the use of the said Washington Street City Park for animals would be prohibited and the animals would be removed therefrom, and also that the buffaloes would be removed from the buffalo pen or range, and that within one year from the date of July, 1910, the plaintiff would install or would cause to be installed water-mains, with water service from the City of Portland and with Bull Run water for the use of the residents and for service at the various lots in Parkside; also that within said period of one year gas-mains would be installed and gas would be distributed throughout said mains for the use of inhabitants and residents; also that within the period of one year the said Parkside Addition would be served with and connected with sewer service, and that within the same period of time all the streets in Parkside Addition would be improved and hard-surfaced and that hard-surfaced roadways and concrete sidewalks and cement curbing would be put in place; also that within one year regular street-car service would be installed for Parkside Addition, which would serve the inhabitants and residents thereof and that said line would be constructed and actual car service begun thereon in the period of time named.'

"(3) The company exhibited a certain map or plat, showing Edison Street running from Washington Street on the north and forming the east boundary of Parkside, to the southerly street thereof.

"(4) That the company would make the improvements referred to.

"(5) That thereby Parkside would be made a desirable addition for residence purposes.

"(6) That Hendricks was induced to and did believe the representations; that he had no other means of knowledge concerning their truth, except as made by the plaintiff. Such statements were made by Dorr E. Keasey, with whom Hendricks had had other dealings, and who had the confidence of Hendricks, and that Hendricks relied upon such statements, and Keasey made them to induce Hendricks to rely upon them.

"(7) Believing such representations, the contract of purchase was entered into and was carried out, and the note and mortgage executed.

"(8) At the time of the mortgage Hendricks had already paid $2,000 cash for said lot.

"(9) After Hendricks purchased the land, he began negotiations for the construction of his dwelling house thereon.

"(10) That the representations and inducements hereinbefore set forth have not been fulfilled, in this: (a) The street-car service was not established as agreed; (b) water-mains and water service were not established as agreed; (c) gas-mains and gas service were not established at all; (d) the barn referred to in the park was not removed as agreed; (e) the wild animals housed in the park have not been removed, but have been continuously lodged and housed in close proximity to the land; (f) the buffaloes have not been removed, but have been penned and caged in the buffalo pen at all times; (g) 'that the use of said barn for domestic animals and the use of said buffalo pen or range constitute and are a nuisance and danger to the health of any residents or inhabitants who might build their home in Parkside, and that the refuse from said animals is piled in such close proximity to Parkside that offensive, odious and obnoxious smells and odors therefrom spoil the value of said lots 1 and 2, block 2, Parkside, as a residence site; that the barns and the piles of offal from the said animals are infested by a large number of rats and vermin, which further depreciates and destroys the value of said above-described property as a residence place; that the wild animals of various kinds and the fowls which are housed and kept at the west side of Washington Park further depreciate the value of said Parkside as a residence section and destroy the property above described for residence purposes, and that in the early hours of dawn, and early hours of morning, and various hours throughout the day, said animals create a continuous and lasting disturbance and noise; (h) that the said plaintiff has failed,

neglected and refused to cause said Edison Street to be paved throughout its length from Barnes Road to the public road on the south side of said Washington Park, and thereby lots 1 and 2 of block 2, Parkside, are deprived of such pavement which plaintiff said they would have; that the said Edison Street is not fully paved in front of said property in Parkside, but there is a space of approximately 25 feet in front of said property which is not paved at all.'

"(11) Except and but for the representations, and the reliance thereon, Hendricks would not have purchased the lot.

"(12) He was induced to make the contract and pay $2,000 cash by the wrongful statements and acts of the plaintiff, and was deceived and defrauded thereby.

"(13) The company has failed, neglected and refused to comply with or perform the terms and conditions involved in said statements and representations, etc.; that they were material, etc.

"(14) The failure to carry out the contract has operated as a fraud on these defendants.

"(15) No street-car service was installed to Parkside at the time the answer was filed.

"(16) By reason of the fraud and wrong perpetrated, as alleged, it was offered to deed said property back, 'which is in the same condition now as it was when these answering defendants purchased it, save and except public improvements,' etc., and upon executing the deed Hendricks demanded the return of his $2,000, with interest at 6 per cent.

"(17) The allegation then continues concerning such representations that each of them was a part and parcel of a general scheme to make Parkside Addition a desirable residential district, and that the fulfillment of the representations would cause added value to the lots.

"(18) 'That at the time said plaintiff made such representations plaintiff did not have any valid or other contract, or any provision, for the removal of the said animals from the said park, or for the aboli-

tion of the buffalo pen at the south of Parkside, nor the installation of street-car service, nor has plaintiff at any time paved all of said Edison Street as hereinbefore described, nor has plaintiff caused Edison Street to be connected with, nor has it placed any means of ingress or egress between said Edison Street as platted to, Barnes Road, and that the representations made by plaintiff were false.'

"(19) That at the time the representations as alleged were made Hendricks requested the company to reduce them to writing; that Keasey assured him they would be carried out, and induced him not to require them to be put in writing, and by reason of his confidence in Keasey he was induced to accept them orally; that such representations were part and parcel of the consideration for the execution of the contract."

The reply alleges in substance that the original contract with defendants was in writing, and denies that any other representations, other than those contained in the writing, were ever made to defendants. The original contract is made an exhibit to the reply, and is as follows:

"Received of E. W. Hendricks the sum of two hundred dollars as a deposit to apply on the purchase of the following described property, situate in the county of Multnomah, State of Oregon, to wit: Lot numbered two (2) in block numbered two (2) in Parkside, according to the duly recorded plat thereof in the office of the county clerk of said Multnomah County, the same being within the corporate limits of the City of Portland. The full purchase price thereof being four thousand dollars, said purchase price to be paid as follows: Eighteen hundred dollars within sixty days from the date hereof, and the remainder, amounting to two thousand dollars, to be paid on or before two years from date hereof, with interest at rate of six per cent per annum, payable annually. An abstract of title covering said property

to be delivered to purchaser within ten days from date hereof. If, as disclosed by the abstract, the title is defective, the purchaser shall be entitled to a return of the deposit mentioned above, without interest, but shall have no other recourse or right of action on account thereof, whatsoever. Upon full payment of the purchase price, the purchaser is to receive a special warranty deed, the covenants of which shall, however, exclude taxes and assessments accruing against the property above described subsequent to the date of this instrument. If the purchaser fails to make the said eighteen hundred dollar payment within the time above specified, time being the essence hereof, the above deposit is to be retained as the consideration for the execution of this instrument and to reimburse the undersigned for the expense incurred in and about said sale, and this receipt shall be null and void. The seller agrees to improve, at its own expense, all the streets in said Parkside with hard-surface pavement, excepting that portion of Kingston Avenue which lies south of the intersection of said Kingston Avenue with Parkside Drive, and lay water-pipes and construct sewers throughout the whole of said Parkside. The deed to said real property to contain a clause restricting the construction of any residence upon said real property so as to cost not less than $3,500, and that no flats, apartment houses, or barns shall be constructed on said property within twenty years from the 1st day of April, 1909.

"Dated at Portland, Oregon, this 26th day of March, 1909.

"D. E. KEASEY & Co.,
"Agents."

Upon the trial there was a decree for the plaintiff, and defendants appeal.    AFFIRMED.

For appellants there was a brief over the names of *Mr. Isham N. Smith* and *Mr. Edwin V. Littlefield*, with an oral argument by *Mr. Smith*.

For respondents there was a brief over the names of *Messrs. A. E. Clark & M. H. Clark* and *Mr. J. H. Middleton,* with an oral argument by *Mr. M. H. Clark.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

It is clear from the testimony that the menagerie maintained by the city adjoining the property of defendants and the barns and stables adjunctive to it greatly impair the value of plaintiff's property for residential purposes. The public taste in these matters has so changed since the time of Adam and Noah that the howl of coyotes, the roaring of lions, the growling of bears, and the screaming of cougars have become such an annoyance to the average ear that few persons are willing to live in close proximity to an aggregation of such animals; but, while this is true, the evidence shows that defendants were as well aware of the conditions as the agent of plaintiff who sold them the property.

1. The defendant E. W. Hendricks testifies as follows to the representations made to him by plaintiff's agent:

"The first thing, the park was to be changed in there, the animals were to be taken out of the park, within six months. * * The buffalo pens were to be removed, and at the time they were negotiating, in fact, had negotiated, and had the promise of the park board that these animals would be removed positively within six months. * * The barn was to be removed."

Mr. Keasey, the agent of the plaintiff in making the sale, testifies on this subject:

"The matter was discussed regarding the animals in the zoo, and I told him I had the members of the

park board and the mayor on the ground, and they promised me they would do all they could to have at least part of the animals removed, and have the old barn torn down; but I made no definite promise that it would be done at any specified time. I only relied on the city government. * *

"Q. Did you have them up there?

"A. I did.

"Q. Did you tell him truly what you thought?

"A. Yes.

"Q. Did you make any further statement or representation concerning the matter?

"A. I did not. Mr. Hendricks said it seemed unreasonable that they could maintain an old barn; that it was a nuisance. He felt sure it would be removed."

Mr. Bennis, another witness for defendants, testifies, in substance:

That when he bought a neighboring lot Keasey told him that the park board had promised to remove the animals and abate the nuisance in a short time.

"Q. He told you they promised they would do that?

"A. Yes.

"Q. And, based on that, he told you he thought they would be removed within a short time?

"A. Yes.

"Q. And the park board passed a resolution about that time, didn't it?

"A. I think they have it on their minutes that they would abate this."

Further testimony on this line was objected to as not the best evidence. Conceding, without deciding, that a representation that the animals would be removed and the nuisance abated was so material under the circumstances as to avoid the contract in case of failure on the part of the city to remove them, the testimony falls far short of proving the representation alleged. The burden of proof is upon the defendants. They are contradicted by Keasey, while the testimony

of Bennis tends rather to corroborate his statement that he only expressed an opinion derived from facts disclosed to Hendricks at the time the negotiations were in progress. It seems fair to infer from the evidence that Keasey had secured such a promise from the park board, and that both he and Hendricks believed that it would be kept.

2. Stress is laid upon the following provision in the written agreement:

"The seller agrees to improve at its own expense all the streets in said Parkside with hard surface pavement, excepting that portion of Kingston Avenue which lies south of the intersection of said Kingston Avenue with Parkside Drive, and lay water-pipes and construct sewers throughout the whole of said Parkside."

The evidence tends to show that at a point on Edison Street, approximately 74 feet north of the southwest corner of defendants' property, there is a sharp declivity, breaking off into Washington Street northerly, which it is impracticable to pave, and that when Edison Street was being paved Mr. Hendricks demanded that a pavement should be put in up to this declivity, admitting that it was impracticable to pave the remainder of the street. This was done to his satisfaction, and, having accepted this as performance of the covenant, he cannot now insist that his grantor shall do an impracticable or impossible thing.

3. It is also urged that there was a failure on the part of plaintiff to lay water-pipes and construct sewers in the addition as provided in the written contract; but the testimony shows that these improvements were made long before the commencement of this suit, and before Mr. Hendricks had given any

77 Or.—8

intimation of an intention to rescind the contract, and it does not appear that he would have been benefited by an earlier installation of these conveniences. The evidence does not bear out defendants' contention that plaintiff orally agreed to install gas service. On the contrary, we think the weight of testimony is to the effect that it declined to make such a promise. The evidence as to whether plaintiff's agent orally promised a street-car line to the addition within one year from the date of the contract is contradictory; the defendants affirming, and plaintiff's agent denying, that such a promise was made. It cannot be said that the defendants, who have the burden of proof in this respect, have shown the existence of such promise by the preponderance of evidence.

4. In any event, where, as in this case, the contract has been reduced to writing and the mutual obligations of the parties specified, defendants cannot vary or alter the written contract by showing contemporaneous parol stipulations not included therein, without alleging and proving that some fraud was practiced upon them to prevent such stipulation from being inserted in the written contract, and there is nothing of that kind in this case: *Looney* v. *Rankin,* 15 Or. 617 (16 Pac. 660); *Stoddard* v. *Nelson,* 17 Or. 417 (21 Pac. 456); *Sutherlin* v. *Bloomer,* 50 Or. 398 (93 Pac. 135). In any event, the parties seem to have settled this contention between themselves long before the suit.

5. Mr. Hendricks objected to paying interest on his note until the car line should have been built, and thereupon the plaintiff gave him a writing waiving interest until it was put in operation; and he has had the benefit of that waiver in the decree here. It further appears that after this writing was given he

continued to treat the property as his own, and joined with other lot owners in the addition in a suit to prevent a city garage from being erected in such a situation as to be a nuisance to the property, and must be held to have acquiesced in the settlement offered by plaintiff.

On the whole case it is evident that plaintiff and defendants relied upon the promise of the park board to remove their collection of nasty, noisy beasts to some other locality, and that if this had been done the other trifling matters urged here by defendants would have been overlooked. That the city continues to offend the ears and nostrils of its citizens with the noise and stench of its collection of beasts is no fault of plaintiff. Defendants were made aware of the conditions before the purchase, and took the chances that the city would refuse to remove the nuisance, deeming such a contingency morally improbable. That their reasonable expectations were not realized is unfortunate, but we have no right to visit the consequences of it upon the plaintiff.

The decree is affirmed.                    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE BENSON concur.